## Patterson *versus* Clyde.

1. A railroad company which had carried goods to Alexandria, shipped them on Clyde's steamer to be delivered to Patterson in Philadelphia, and took from Clyde a bill of lading and receipt in the name of the company. Whatever contract of carriage was made with Clyde by the company, became the contract of Patterson.

2. The company were the agents of Patterson, and in a suit by Patterson against Clyde for the loss of the goods, evidence of the terms of the contract between the company and Clyde was proper.

3. The receipt of Clyde for the goods, excepted "the dangers of fire while on board the vessel," &c. In an action by Patterson for the loss of the goods, it was admitted that the steamer and the goods were burned on her voyage. *Held*, that the *onus* was on Patterson to show negligence in Clyde.

4. Fire was the thing excepted against and when a loss by fire was shown the thing excepted was proved.

5. Farnham *v.* Camden and Amboy Railroad, 5 P. F. Smith 53, adopted.

February 21st, 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Certificate from Nisi Prius: No. 83, to January Term 1867.

This was an action on the case by Robert Patterson against Thomas Clyde and Thomas H. Pierce.

The declaration set out that the defendants were the owners of the steamboat "Liberty," on the Potomac river, bound for Phila-

[Patterson v. Clyde.]

delphia, and were common carriers of goods from Alexandria on the Potomac river to Philadelphia; that the plaintiff on the 1st of January 1866, shipped at Alexandria 17 bales of cotton to be carried safely to Philadelphia; that the defendants did not safely carry the cotton nor deliver the same, but so carelessly and negligently behaved and conducted themselves, that the cotton was wholly lost to the plaintiff.

On the trial, before Williams, J., it was agreed:—

1. That the defendants are and were running a line of steamers between Alexandria, Va., and Philadelphia for the transportation of goods, and were owners of the steamer "Liberty."

2. That on the 4th of January 1866, 17 bales of cotton, weighing        each, and of the value of 47 cents per lb., were shipped by the Orange and Alexandria Railroad Company, upon the said steamer, consigned to the plaintiff, which cotton was part of a shipment from Atlanta, Ga., to the plaintiff.

3. That on the morning of the 5th of January 1866, while the said steamer was on her way from Alexandria to Philadelphia, the said steamer with all her cargo, including said cotton, was entirely consumed by fire.

The "Liberty" was running on the New Express Line between Philadelphia and Alexandria, &c.

The plaintiff then closed.

The defendants gave evidence, by the deposition of Francis A. Reed, a partner in the firm of M. Eldridge & Co., who were agents of the New Express Line, that there was a contract for the shipment of the cotton by a bill of lading, which was issued to the Orange and Alexandria Railroad Company, who were the shippers and the persons from whom the cotton was received. The instructions were to send it by the "Liberty," then in port, and deliver it to R. Patterson, Philadelphia.

To a cross-interrogatory on the part of the plaintiff he answered, that the bill of lading was written out before William M. Reardon, clerk in the employment of M. Eldridge & Co., and by this deponent delivered to Mr. W. Y. Henry, local freight agent at that time for the O. & A. Railroad in the office of M. Eldridge & Co., No. 4 South wharves. That said bill of lading was written out and delivered in the presence of the deponent on the 5th day of January, A. D. 1866. That the said steamer Liberty did not sail until late the previous day, and although bills of lading were duly prepared, yet owing to the lateness of the hour they were not as to most of them delivered until the following day. That at the time Mr. Henry called for his, he was not aware of the loss of the Liberty, though this deponent believes the news had just reached the office of M. Eldridge & Co. through the captain.

The defendants then gave in evidence the bill of lading, which, after the conditions, contained the following:—

[Patterson *v.* Clyde.]

* * * "Received from O. & A. Railroad, on board 'Liberty,' seventeen bales of cotton, marked and numbered as in the margin hereof, which are to be delivered at Philadelphia (the dangers of fire while on board the vessel or on shore, accidents from machinery, boilers, steam, or any other accidents and dangers of the seas, rivers, inland canal, and steam navigation, of whatever nature or kind, excepted), to R. Patterson upon surrendering this receipt at our office at the above port, and paying freight and charges therefor." * * *

The defendant then called Francis A. Reed, above named, who, under objection and exception, said :—

"There was a contract with the Orange & Alexandria Railroad Co. The contract was in existence before the loss of the 'Liberty;' it was a verbal contract that the Express Line would take freight consigned by the Orange & Alexandria Railroad to Philadelphia, subject to the conditions of the bill of lading of our company.

"There was a distinct understanding that the company would not be liable as insurers. This is a copy of the bill of lading used by us."

"I made the contract with the president of the Orange and Alexandria Railroad Co., Mr. Andrew Jamison. Its terms were that we would take freight offered by them subject to the conditions of the bill of lading.

"The contract was made in the fall of 1865, at Alexandria, in front of our office. We are in the habit of issuing bills of lading when the shipper calls. Our general rule is not to issue them unless called for.

"I approached Mr. Andrew Jamison; he was the president appointed by the Board of Public Works, to take charge of the road at the close of the war. The arrangement was to apply to both our lines (to Philadelphia, and to New York); we were to take freight at fixed rates subject to the terms of our bills of lading. I have stated all that took place at the conversation with Mr. Jamison; there was no paper or instrument of any kind before us.

"The bill of lading was not delivered because it was too late when the steamer started. Mr. Henry asked for it on the morning of January 5th (1866), after the steamer was burnt. This cotton was the last thing to go on board. It was dark—5 o'clock. The agent did not give us the name of the consignees, and we could not make out the manifest. The railroad company were in the habit of asking for bills of lading."

Williams, J., charged the jury :—

"The question for the determination of the jury is, what was the contract under which the cotton was shipped? Was it the

[Patterson v. Clyde.]

ordinary, common-law contract of a common carrier? Or was it a contract of limited liability?

"The witness Reed, whose credibility is for you, says that he had previously contracted to take all the goods from the Orange & Alexandria Railroad Co., under and subject to the defendants' bill of lading, which contained an exemption from liability for losses by fire. In addition to his testimony, there is the fact that the bill of lading delivered the next day, contained such an exemption. If this bill of lading was agreed to—if it was in pursuance of a previous contract, under which the cotton was shipped, the defendants might well deliver it the next day—although the loss had actually occurred. The acceptance of the bill of lading by the shipper the next day is some evidence of the contract. It would lie upon the shipper, when he received a bill of lading, it seems to me, to show that it was received through some mistake or fraud, in order to defeat the presumption that it contained the contract under which the goods were shipped. If the shipper takes the bill of lading, reads it and files it away, the presumption is that it was the contract. In this case there is no evidence of any fraud or mistake as it respects the delivery and receipt of the bill of lading. If you find that the cotton was shipped under such a contract as that contained in the bill of lading, your verdict will be for the defendants, otherwise it will be for the plaintiff for the value of the cotton shipped on board of the defendants' boat."

The verdict was for the defendants.

The plaintiff had the record certified to the court in banc, and assigned for error, the admission of the evidence objected to and the charge of the court.

*A. D. Campbell* and *J. E. Gowen*, for plaintiff in error.—The verbal contract testified to by Reed did not amount to a contract, but merely to a notice, and that as such it was necessary to show that knowledge of it was brought home to the plaintiff: Judson *v.* Western Railroad Corporation, 6 Allen (Mass.) 486; Perry *v.* Thompson, 98 Mass. 249; Buckland *v.* Express Co., 97 Id. 124. A common carrier may limit his liability by contract, notice or special acceptance, except in cases of negligence: Bingham *v.* Rogers, 6 W. & S. 495; Laing *v.* Colder, 8 Barr 479; Camden & Amboy Railroad Co. *v.* Baldauf, 4 Harris 67. Carriers are bound to furnish a reasonable explanation of the loss, or at least to give some account of the circumstances of the loss, before the plaintiff can be required to prove affirmatively that the loss occurred from a cause not within the exemption: Beckman *v.* Shouse, 5 Rawle 179; Beardslee *v.* Richardson, 11 Wend. 25; Clark *v.* Spence, 10 Watts 335; Verner *v.* Sweitzer, 8 Casey 208; Whitesides *v.* Russel, 8 W. & S. 44; Hays *v.* Kennedy, 5 Wright 378;

Davidson *v.* Graham, 2 Ohio N. S. 133; Farnham *v.* Camden & Amb. Railroad, 5 P. F. Smith 53; Am. Exp. Co. *v.* Sands, Id. 140.

*R. C. McMurtrie*, for defendants in error.—The practice is to leave the goods on a receipt, and then call for the bill of lading: Abbott on Shipping 321, pt. iv. ch. iv., § 2.

The *onus* is on the consignee to prove negligence in the carrier under a bill of lading such as this: Abbott on Ship. 390; Story Bail. §§ 512, 573; Marsh *v.* Horne, 5 B. & C. 323; Muddle *v.* Stride, 9 Carr. & P. 380; Lowe *v.* Booth, 13 Price 329; Ross *v.* Hunter, 4 Term R. 33; Bell *v.* Reed, 4 Binn. 127; 2 Stark. Ev. 205; Farnham *v.* The Cam. & Amb. Railroad, *supra;* Butt *v.* The Great Western Railway, 11 C. B. 140; Harnden *v.* New Jersey Nav. Co., 6 Howard 344; Plate *v.* Hubbard, 7 Cow. 500.

The opinion of the court was delivered, March 20th 1871, by

AGNEW, J.—This action is directly against the defendants as carriers from Alexandria to Philadelphia. The plaintiff had no connection with them except through the Orange and Alexandria Railroad Company. The defendants not being liable for or privy to the transportation over the railroad line, and the railroad company being the only shipper known by them, whatever contract was made with them by the railroad company for the shipment from Alexandria to Philadelphia, necessarily became the contract of the plaintiff. It is unlike the case of a contract with a carrier to deliver at a point beyond the termination of his own route, by which he makes himself liable for the acts of others on the terms of the original shipment. Here the defendants contracted only for themselves, and the railroad company necessarily became the agent of the plaintiff. He is consequently bound by the terms of their shipment. Clyde *v.* Graver, 4 P. F. Smith 251, cited on this point, is totally different in its circumstances. The offer of evidence to prove the terms on which the railroad company made the shipment was to prove a contract and not a mere notice. It was properly allowed.

The real question tried was, whether the contract of shipment was the ordinary one for carriage, or was limited in its terms against loss by fire. The restriction has been found by the jury on sufficient evidence. The proof is clear, that all shipments by the Orange and Alexandria Railroad Company were, by express agreement, between that company and the defendants to be made upon the terms of the defendants' bill of lading, containing an express exception of "the damages of fire while on board the vessel or on shore." The delivery of the goods was late in the evening (about dark), and the bill of lading was made out next morning; the vessel starting in the mean time, and having been

[Patterson v. Clyde.]

burnt up the same night with all her cargo. The practice of taking receipts for the goods upon delivery on board, and making out the bill of lading afterward, is one of common usage, caused by the press of business, and the ordinary bustle and haste in receiving cargo. It is recognised in Abbott on Shipping, part IV. ch. 4, § 2. The contract limiting liability being established, the plaintiff raised the question of the *onus* of proof as to the loss, and that is the only question for our consideration. The plaintiff contends that the defendants must show not only the loss by fire, but that every proper precaution was taken against it, and the absence of all negligence. To determine this point properly, we must notice the precise statement of the case. To facilitate the proof of his case the plaintiff gave in evidence the following agreement: "It is agreed to be admitted in evidence on the trial of this case:

"1. That the defendants are and were running a line of steamers between Alexandria, Va., and Philadelphia, for the transportation of goods, and were owners of the steamer 'Liberty.'

"2. That on the 4th of January 1866, seventeen bales of cotton, weighing —— each, and of the value of forty-seven cents per pound, were shipped by the Orange and Alexandria Railroad Company, upon said steamer, consigned to the plaintiff, which cotton was part of a shipment from Atlanta, Georgia, to the plaintiff.

"3. That on the morning of the 5th of January 1866, while the said steamer was on her way from Alexandria to Philadelphia, the steamer, with all her cargo, including said cotton, was entirely consumed by fire."

Now, it is quite evident that this agreement was drawn so as to furnish proof on the part of the plaintiff of the liability of the defendants as common carriers, if there were no restriction of their common-law liability; and so as to be proof on the part of the defendants of the loss by fire, if a restriction existed. The evident purpose was to leave the precise terms of the contract of shipment for further proof. The state of the case then was this: that the defendants thereby had proved a total loss of boat and cargo by fire, while on her proper voyage to the port of delivery, without any circumstances in evidence from which a jury could draw the conclusion of negligence leading to the loss. The question which the plaintiff presents is therefore whether in addition to the proof of a loss by fire in the due course of the ship's voyage unattended by circumstances indicating negligence, the defendants are bound to prove such care and diligence at and before the time of the fire, as will exclude a presumption of negligence; or in other words, whether they must negative negligence by affirmative evidence of diligence. This point is ruled by the case of Farnham *v.* Camden and Amboy Railroad Co., 5 P. F. Smith

[Patterson *v.* Clyde.]

53.   The principle of that case is, that the burthen of the proof of the loss which brings the carrier within the restriction in his contract lies on him ; but when he has proved such a loss, unattended by circumstances indicating negligence, the *onus* of the proof of negligence is cast upon the plaintiff.   The effect is, that the carrier must begin the proof, and if he cannot make it without showing negligence, or circumstances from which it will be inferred, he is not exonerated.   But when he has shown a loss within the restriction, to require more of him is to limit the restriction and destroy its chief purpose.   It is the great risk of fire, not compensated by the ordinary compensation for carriage, and the difficulty of preventing it even with great care, as well as the impossibility oftentimes of proving the attending circumstances, which constitute the great reason for the limitation of liability from this cause. When vessel and cargo have both been consumed, and the sailors have gone to the bottom, or have been scattered over the seas in other service, no evidence remains of the attending circumstances and the limitation is useless, if, in addition, the carrier must prove due care and diligence affirmatively.   When he has shown a loss within the exception of his contract, without apparent negligence, he has brought himself within the terms of his bargain.   On what principle is that bargain to be nullified, by requiring of him the production of that evidence, the loss or difficulty of obtaining which was the very reason for limiting his responsibility ?   He may well say to the shipper, if this be the rule you would put me under, pay me extra hire for the service, for I might as well omit the restriction if I am held to a measure of evidence I probably cannot furnish.   To load down his contract with this measure of proof is simply to hold that he may not limit his responsibility. It is surely enough to say to him, if your own evidence shows your negligence you have not acquitted yourself of liability.

The presumption of self-interest as well as of honesty forbids the idea of a voluntary or a negligent fire, which must cause so much loss to the owner and so much danger to his servants.   That the *onus* of establishing negligence should rest upon the plaintiff is therefore a proper consequence of the power to limit liability by a special contract, and is, I think, established by authority also : Harris *v.* Packwood, 3 Taunton 264 ; Marsh *v.* Horne, 5 Barn. & Cress. 322 ; Muddle *v.* Stride, 9 Carr. & Payne 380 ; Clarke & Co. *v.* Spence, 10 Watts 335 ; Goldey *v.* Penna. Railroad Co., 6 Casey 246 ; New Steam Nav. Co. *v.* Merchants' Bank, 6 Howard 384 ; Farnham *v.* Camden & Amboy Railroad Co., 5 P. F. Smith 59, 60.

A class of cases is cited by the plaintiff as holding the contrary, which may be illustrated by Humphreys *v.* Reed, 6 Wh. 435 ; Whitesides *v.* Russell, 8 W. & S. 44, and Hays *v.* Kennedy, 5 Wright 378, wherein the exceptions were, " the dangers

[Patterson v. Clyde.]

of the navigation," "the dangers of the river," and "the unavoidable dangers of the river navigation." It was held there that the carrier must prove not only the loss, but the manner of 'it, and that actual care and diligence had been used to avoid it. But the reason of the decision is, that without proof of the circumstances it is impossible to say whether the loss arose from a danger of navigation. Such a peril can only be known from its facts. This is well explained by Kennedy, J., in Humphreys v. Reed. Now, he says, the striking of the boat upon a stone or rock in the canal may or may not fall within the exception. For instance, if the stone from its position may be readily seen and avoided by those upon the boat; or although not visible, yet if its situation be generally known the loss ought to be imputed to the fault of the captain or those having the direction of the boat. But if, on the other hand, it was not known, and was invisible to the common eye, the loss occasioned by the boat striking upon it ought to be considered as coming within the exception, which embraces all dangers of the navigation.

Thus it is evident that a peril of navigation is a thing having no definite fact to rest upon in the writing, but must be made to appear in the very facts of the loss. But not so as to a loss by fire, which is a specific thing and determines at once the character of the loss. The fire is the very thing provided for in the exception, and when the loss is shown to have arisen from a fire which consumes vessel and cargo, the thing excepted is proved. This excepted peril is shown to have caused the loss, and to add more to the evidence is to alter the terms of the contract.

Nothing need be said in reference to such cases as Berkner v. Strouse, 5 Rawle 179, where the plaintiff shows an ordinary case of contract for carriage, and that the goods have not been delivered. There he may rest and throw upon the defendant the onus of proving the loss and how it happened, in order to discharge himself from liability. Until the exception is made to appear and that the loss fell within it, the plaintiff may rely on the general rule governing the liability of the carrier. No error being shown the judgment must be affirmed.