PHŒNIX POT WORKS v. PITTSB. ETC. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 2 OF ALLEGHENY COUNTY.

Argued November 5, 1890—Decided January 5, 1891.

(a) Goods were shipped by a common carrier, under a bill of lading stip-
ulating that they were carried at the owner's risk of breakage, chafing,
etc., and under a standing release of all damage "from any cause not
the result of collision of trains, or of cars being thrown from the track
while in transit:"

1. There being evidence tending to show that the goods were carefully
packed when shipped, that plaintiff's goods so packed uniformly reached
the place of delivery in good condition, and that the goods in contro-
versy when at their destination were injured, it was for the jury to say
whether the injury was not the result of defendant's negligence.

2. To entitle the plaintiff to recover, under the terms of the release, he
was not restricted to proof of such gross negligence as would result in
collision or derailment; and, in the absence of such proof, the question
whether it was guilty of negligence in the transportation of the goods
was a question of fact for the jury.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 212 October Term 1890, Sup. Ct.; court below, No.
535 January Term 1889, C. P. No. 2.

On January 3, 1889, service of a summons was accepted in
assumpsit brought by the Phœnix Clay Pot Works against the
Pittsburgh & Lake Erie Railroad Co.   Issue.

At the trial on January 9, 1890, it was shown that on Jan-
uary 23, 1888, the plaintiff company shipped by the defendant's
road, from Pittsburgh to Phillipsburg, in Beaver county, four
glass-house pots.   These pots were put into a box car by the

plaintiffs, packed by themselves. They weighed about 1,500 pounds each, were flat-bottomed, about 46 inches high, and shaped like a bakeoven, but with a projecting mouth or hood. The method of packing was to put in two of them with their mouths toward the end of the car, and the two others with their mouths toward the other end of the car, hay or straw being used to surround and cover them. They were easily broken, and each pot was worth about $50.

The bill of lading contained the following provision :

" Neither this company, nor any other such company, shall be liable for any loss or damage to such property by dangers of accident to railroad transportation, or by fires or floods, while at depot stations, yards, landings, warehouse, or in transit ; and said property is to be carried at the owner's risk of leakage, breakage, chafing."

To cover shipments during the year 1888, the plaintiff company had executed and delivered to the defendant company a paper dated January 10, 1888, containing the following provision :

" In consideration of the Pittsburgh & Lake Erie Railroad Company transporting my property, as described, at a reduced rate, all glass-house pots, etc., shipped by us during the year 1888, from Pittsburgh station to various stations, the same being consigned to various parties, at various points, I hereby release said company, and each and every other company over whose lines said goods may pass to their destination, from any and all damage that may occur to said goods, arising from leakage or decay, chafing or breakage, damage by fire while in transit or at stations, loss or damage from the effects of heat or cold, from delay at points of transfer or trans-shipment, or from any cause not the result of collision of trains, or of cars being thrown off the track while in transit."

It was shown further that plaintiffs' glass-pots, packed like those in this case, had uniformly reached their destination in good condition ; that when these pots arrived at Phillipsburg, they were found to be displaced in the car, and that on further inspection, they were condemned as broken and unfit for use. The conductor of the train testified that there had been no collision or derailment on the way.

Charge of Court below.

At the close of the testimony, the court, WHITE, J., charged the jury in part as follows:

As to these pots being injured so as to become worthless, in consequence of the negligence of the railroad company, the mere fact that the pots were discovered to be injured when the car was opened at Phillipsburg, would not of itself make the company liable; because, to get clear of the release by the plaintiffs they must show that it was an injury resulting from something not properly embraced within the release. In other words they must show it was through the actual negligence of the company. The burden of proof is on the plaintiffs to show that these pots were injured and destroyed by the negligence of the company.

On that point, we have no direct testimony as to how they were injured. No witness testifies to the time and manner of the injury. It is a matter that will have to be ascertained by the jury from the evidence. We have the testimony of the man who shipped these pots at South Pittsburgh. He testifies that he superintended the shipping of them; had his gang of men describe how they were put in the car, and how they were protected by hay when put in the car, but he testified from his general habit. He said he could not remember anything in particular about these four pots, or this identical shipment. He testified that it was his custom in all cases to ship them carefully, in the manner he testified to, and that these must have been shipped in that way, because he invariably was careful in shipment and guarding against accidents in the way he described. He testified that for years they had been shipping pots in the same way, and that all had gone safely down to Phillipsburg.

Now, we have the testimony of the witness that went down from South Pittsburgh, Mr. O'Connell, foreman, I believe, of the pot works, and also the testimony of the foreman of the glass works, in Phillipsburg, as to the position and condition of these pots when the car was opened, or shortly after. The testimony is that the pots were put in straight, one right before the other, a certain distance apart, with hay between them. The testimony is that when they were down at Phillipsburg they were not in that condition, but seemed to have been shifted; and, as one of the witnesses said, the front pots were

Charge of Court below.

kind of angling across the cars, showing that they were not in the same position they were when shipped, if you believe the witnesses. The question is, how came they to be shifted? One of the witnesses intimated that if the hay had been of a slippery character, in the shaking of the car they might have shifted and come in contact with each other. Another theory, and that is the theory on the part of the plaintiffs, is that there must have been some sudden jar of the car by stopping or starting suddenly, or something of that kind, that caused the displacement of these pots. It is for you to say whether there was any negligence on the part of the railroad company. . . . . .

The court is requested by the plaintiffs to charge:

1. That the defendants cannot, by a release, exempt themselves from responsibility for actual negligence of themselves or servants.

Answer: Affirmed.

2. That it is a question for the jury as to whether defendant was negligent, in this case, so as to cause this injury; and, if they find that it was, the verdict should be for the plaintiffs for the value of the goods shipped.

Answer: Affirmed.[3]

The court is requested by the defendant to charge:

1. That, under all the evidence in this case, the verdict must be for the defendant.

Answer: Refused.[1]

2. That, under the bill of lading and release in this case, there being no proof of collision or of cars being thrown off the track while in transit, or of negligence, the verdict must be for the defendant.

Answer: There is no proof of any collision, or of the cars being thrown off the track; but, whether there was negligence is a question of fact for the jury.[2]

3. That no presumption of negligence on the part of the carrier arises from the condition of the clay pots at the place of delivery, and the jury can draw no inference of negligence therefrom.

Answer: Affirmed.

—The jury returned a verdict for the plaintiffs for $200. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

Opinion of the Court.

1, 2. The answers to the defendant's points.[1][2]

3. The answer to the plaintiffs' point.[3]


*Mr. Edwin W. Smith* (with him *Mr. James Reed* and *Mr. P. C. Knox*), for the appellant.

Counsel cited: Penna. R. Co. v. Miller, 87 Pa. 398; Farnham v. Railroad Co., 55 Pa. 59; Goldey v. Railroad Co., 30 Pa. 244; Grogan v. Express Co., 114 Pa. 523; Adams Exp. Co. v. Holmes, 19 W. N. 571; Weiller v. Penna. R. Co., 134 Pa. 310; New York etc. R. Co. v. Eby, 22 W. N. 92; Penna. R. Co. v. Raiordon, 119 Pa. 577.


*Mr. Willis A. Boothe*, for the appellees.

Counsel cited: Penna. R. Co. v. Miller, 87 Pa. 395; Adams Exp. Co. v. Sharpless, 77 Pa. 517; Safe Dep. Co. v. Pollock, 85 Pa. 391; New York etc. R. Co. v. Eby, 22 W. N. 92.


OPINION, MR. JUSTICE STERRETT:

There was no error in refusing to charge, as requested in defendant's first point, "that, under all the evidence, the verdict must be for defendant." In affirming defendant's third point, "that no presumption of negligence on the part of the carrier arises from the condition of the clay pots at the place of delivery," etc., the learned judge went to the very verge of propriety, if not beyond it; but of course the defendant does not complain of that.

The case was clearly a proper one for the consideration of the jury on all the evidence before them. Considering the damaged condition of the pots, at the place of delivery, in connection with the evidence as to their soundness when shipped, and the careful manner in which they were packed in the car, and the further fact that similar pots, packed in like manner, had uniformly reached their destination in good condition, it cannot be successfully contended that, under all the evidence, the jury were not warranted in finding that the destruction of the pots was the result of actual negligence on the part of the carrier. If they believed, as they might well do, from the evidence before them, that the pots were so carefully and securely packed in the car that nothing short of positive carelessness, in course of transportation, could have injured them, it was their duty to find as they did.

There is no analogy between the death of a horse or other animal in transitu, without any visible cause,* and the injury or destruction of inanimate property, such as the clay pots in this case. In the absence of proof to the contrary, the fair inference is that the death of the former is due to natural causes; but not so in the latter case. If the pots were carefully and securely packed, when delivered to the carrier, and, when they reached their destination, were found in the badly damaged condition described by the witnesses, the only reasonable inference was that they were not transported with ordinary care. These questions of fact and inferences were for the jury, and' it would have been error to have withdrawn them from their consideration.

In defendant's second point for charge, it is erroneously assumed that nothing short of proving collision or derailment of the cars would warrant the inference that the injury complained of was the result of actual negligence. The plaintiff was not restricted to proof of such gross negligence as would result in either collision or derailment of the cars. The point as presented might have been refused, but it was adequately answered by saying: "There is no proof of collision, or of the cars being thrown from the track; but, whether there was negligence is a question of fact for the jury."

It follows from what has been said that there was no error in affirming plaintiff's second point. Neither of the specifications of error is sustained.

Judgment affirmed.

---

* See Penna. R. Co. v. Raiordon, 119 Pa. 577.