## John J. Keller *v.* Baltimore & Ohio Railroad Company.

*Common carrier—Destination—Carrier of live stock—Province of court and jury.*

Where a bill of lading names as destination of live stock a town beyond a city which was the terminus of the carrier's road, and it is stipulated that the carrier's liability shall cease at its freight station in the city, and it is undisputed (1) that the carrier's road for delivery of freight did not extend beyond its freight station, and (2) that the horses were in good condition when they were delivered at the freight station to the connecting carrier, these questions should not be submitted to the jury.

*Common carrier—Carriers of live stock—Bill of lading—Parol evidence to vary written agreement.*

Where a bill of lading names a destination beyond the terminus of the initial carrier's railroad, but such carrier's liability is explicitly confined to its own route, and the paper is clear, plain and unambiguous, the shipper's rights, if he has failed to show a modification of the bill of lading, or parol agreement as an inducement thereto, must be ascertained by the terms of the agreement itself, and in such a case the initial carrier is not

196        57
  27 SC ¹349

196        57
  28 SC  215

196        57
d 33 SC ¹648

liable for any injuries received by the shipper's property while on the line of the connecting carrier.

*Carriers—Bill of lading—Connecting carrier—Liability.*

. A receipt clause in a bill of lading naming a point beyond the initial carrier's terminus as the destination of the goods, does not impose upon the carrier issuing the bill of lading the liability of a carrier beyond the terminus of its road, nor is it in conflict with an expressed stipulation that the carrier's liability should cease at its own terminus, or with a provision that if it were necessary to deliver the goods to another carrier to reach their destination, the initial carrier should not be liable for the fraud and negligence of such other carrier.

DEAN, J., dissents.

Argued March 19, 1900. Appeal, No. 233, Jan. T., 1899, by plaintiff, from judgment of Superior Court, Oct. T., 1897, No. 215, reversing judgment of C. P. No. 4, Phila. Co., Sept. T., 1892, No. 639, on verdict for plaintiff in case of John J. Keller v. Baltimore & Ohio Railroad Company. Before GREEN, C. J., DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Appeal from Superior Court. See 174 Pa. 65, and 10 Pa. Superior Ct. 240.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in reversing judgment of the court of common pleas.

*Charles F. Linde,* for appellant.—When a common carrier receives goods, the question whether the carrier contracts to carry the goods to their destination, or only to deliver them safely to the next carrier at the point nearest or most convenient to the destination is one of fact for the jury: Baltimore & Phila. Steamboat Co. v. Brown, 54 Pa. 77; Phila. & Reading R. R. Co. v. Ramsey, 89 Pa. 475; Keller v. Balt. & Ohio R. R., 174 Pa. 62.

There can be no doubt as to the authority of the railroad agent at Belpre, Ohio, to contract to carry these horses to Frankford, whether the company had a line, track or station there or not: Easton v. Dudley, 45 Am. &. Eng. R. R. Cases, 341; 1 Wood on Railroads (2d ed.), sec. 165; Deming v. Grand Trunk R. R. Co., 48 N. H. 457; Balt. & Phila. Steamboat Co. v. Brown, 54 Pa. 77; Brooke v. New York, etc., R. R.

Co., 108 Pa. 545; Penna. R. Co. v. Berry, 68 Pa. 277; Clyde v. Hubbard, 88 Pa. 358.

This court has held repeatedly that a bill of lading is not such a complete contract as to exclude all testimony of what is not expressed and necessary to a complete contract. It is but a memorandum of contract: Balt. & Phila. Steamboat Co. v. Brown, 54 Pa. 81; Barnhart v. Riddle, 29 Pa. 96; Gould v. Lee, 55 Pa. 108; Centenary M. E. Church v. Clime, 116 Pa. 151; Greenawalt v. Kohn, 85 Pa. 375; Barclay v. Wainwright, 86 Pa. 191; Bown v. Morange, 108 Pa. 75; Harper v. New York City Ins. Co., 22 N. Y. 443; Grandin v. German Ins. Co., 107 Pa. 32.

*W. B. Linn,* for appellee.—Where a shipment is accepted by a railroad company, and billed to a point beyond the terminus of its line, the company's responsibility as a common carrier ceases at the terminus of its line, and the company then becomes the forwarding agent of the shipper only: Jenneson v. Camden & Amboy R. R., etc., Co., 4 Am. Law Reg. (O. S.) 234; Penna. R. Co. v. Berry, 68 Pa. 272; Empire Transportation Co. v. Wallace, 68 Pa. 302; Camden & Amboy R. R. Co. v. Forsyth, 61 Pa. 81; Keller v. Baltimore & Ohio R. R., 174 Pa. 62; Watson v. Ambergate, Nottingham & Boston Ry. Co., 15 Jurist, 448.

OPINION BY MR. JUSTICE MESTREZAT, May 14, 1900:

By the plaintiff's statement it appears that this action was brought to recover "$2,000 for damages for the breach of a contract entered into between the plaintiff and the defendant for the nondelivery of a carload of horses at Frankford in the city of Philadelphia."

The agreement for the transportation of the horses was in writing and signed by the agents of the parties. The contract was made at Belpre, Ohio, at which point the defendant company received the stock. It names J. J. Keller, the plaintiff, as consignee and Frankford, Philadelphia, as the destination of the horses. But it is distinctly provided in the agreement for transportation that the horses were "consigned as above to be transported by said company to the freight station at Philadelphia, Pennsylvania, ready to be delivered to the consignee, or

his order, or to such company or carrier (if the same is to be forwarded beyond said station), whose line may be considered a part of the route to the destination of such stock (it being distinctly understood that the responsibility of the Baltimore & Ohio Railroad Company, as carrier, shall cease at the aforesaid freight station when delivered, or when ready to be delivered to such consignee, owner, or carrier) upon the terms and conditions" named in said agreement. In the fifth and sixth clauses of the contract it is stipulated as follows: "Fifth. The company does not agree to transport the said live stock by any particular train, within any specified time or any time for any particular market, and neither will the company be responsible for any loss or damage occurring by reason of the refusal, failure or inability of a connecting line to receive and forward the stock after tender of delivery. Sixth. When necessary to transport said stock to point of destination over the line of any other carrier or carriers, delivery of the same to such other carrier or carriers may be made, and, in receiving the same for transportation, all the terms and conditions hereof shall inure to and be binding on such carrier as if originally made with them, and one carrier shall not be liable for the fraud or negligence of the other."

The horses were shipped over the defendant company's road from Belpre, Ohio, on June 13, 1892, and arrived at its freight station in Philadelphia, at Twenty-fourth and Race streets, at 2:20 o'clock in the morning of June 15, 1892. The plaintiff's agent refused to receive them or to have them unloaded at this station, and, on his request that they be taken to Frankford, the car containing them was then · delivered to the Philadelphia & Reading Railroad Company at Park Junction, where they had arrived at 5:20 o'clock of the same morning. The car was taken immediately to Belmont station on the Reading road, where connection is made with the Pennsylvania railroad for Frankford. The eastern terminus of the defendant's road for delivery of freight is at its freight station at Race street. Frankford, the destination of the stock, is some miles distant beyond this freight station, and is not on defendant's road. The only route by which the car could be taken from the Baltimore & Ohio Railroad tracks to Frankford was by way of the Philadelphia and Reading Railroad to its Belmont station, and

thence by the Pennsylvania railroad.    The day after the horses arrived at Belmont the plaintiff found them in a barn at the North Penn drove yard, on the Philadelphia and Reading railroad.    They were injured after they had left the custody of the defendant company and had been delivered to the Philadelphia and Reading Railroad Company.

The above facts were conceded or conclusively established by the testimony on the trial in the court below.    The learned trial judge submitted the case to the jury, and permitted them to determine whether the defendant's freight line extended to Frankford, and whether the written contract between the parties had been so modified as to impose on the defendant company the responsibility of carrier beyond its station in Philadelphia. The verdict was in favor of the plaintiff, and from the judgment entered thereon an appeal was taken to the Superior Court.    That court reversed the trial court and held that under the evidence the verdict should have been for the defendant.

We entirely agree with the disposition of the case made by the Superior Court.    That the defendant's road for the delivery of freight did not extend beyond its freight station at Race street was not disputed, and, therefore, was not a question to be determined by the jury.    Nor was it denied that the horses were in good condition when they left the possession of the defendant company and were delivered to the Philadelphia and Reading Railroad Company, whose road was the connecting line for Frankford, the destination of the stock.    These facts were practically conceded, and should have been so regarded by the court below.

The attempt to modify or annul the written contract of the parties and substitute a parol agreement therefor was unsuccessful.    Without an extended reference to the testimony on the subject it is sufficient to say that, as against the bill of lading, it was wholly inadequate to establish an assumption of liability by the defendant company as carrier beyond the terminus of its freight line.    The requisite evidence to modify the contract, or to show a verbal contemporaneous agreement as an inducement thereto and thus impose a carrier's liability on the defendant, was not produced by the plaintiff, and, as we said when the case was here before (174 Pa. 65), " in the absence

of satisfactory proof upon the subject the plaintiff was not entitled to recover." The learned court below from whose judgment this appeal was taken, misapprehending the language of the opinion of this court when the cause was here on the former appeal, submitted the case to the jury. This was erroneous. The sufficiency of the testimony for the purpose for which it was offered was a preliminary question for the court, and it should have been determined in favor of the defendant. Regardless, therefore, of the right of the plaintiff to introduce parol testimony for the purposes stated, the plaintiff's case as presented in the court below did not, under the evidence submitted, warrant a verdict in his favor.

The bill of lading is clear, plain and unambiguous. Its receipt clause named Frankford as the destination of the stock. This, however, did not impose upon the defendant the liability of a carrier beyond the terminus of its road: Camden & Amboy Railroad Company v. Forsyth, 61 Pa. 81. Hence it is not in conflict with the express stipulation in the subsequent part of the agreement that the defendant's liability as carrier should cease at its freight station in Philadelphia. Nor was it at all inconsistent with the sixth clause of the agreement wherein it is provided that "when necessary to transport said stock to point of destination over the line of any other carrier or carriers, delivery of the same to such carrier or carriers may be made," and that the defendant should not be liable for the fraud and negligence of such other carrier. There is no contradiction, ambiguity or uncertainty in the terms of the written agreement under which the stock was shipped; on the contrary it is apparent from all of its provisions that the defendant's liability as carrier was to cease at the end of its route.

The plaintiff having failed to show a modification of the bill of lading or parol agreement as an inducement thereto, his rights against the defendant for any damages he may have sustained in the shipment of the horses must be ascertained by its terms. These, as we have seen, explicitly confined the defendant's liability as carrier to its own route. It follows, therefore, that for any injuries received by the plaintiff's stock while on the line of a connecting carrier the defendant is not responsible, and the jury should have been so instructed.

The assignments of error are overruled and the judgment of the Superior Court is affirmed.

DEAN, J., dissents :

I am clearly of opinion this case was one of disputed fact for the jury, and therefore dissent.