# Rhymer v. Delaware, Lackawanna and Western Railroad Company, Appellant.

*Common carriers—Carrier—Railroads—Negligence—Damages—Bills of lading.*

A clause of a bill of lading limiting the amount of the recovery to the value of the goods at the point of shipment is invalid as against a loss arising from the negligence of the carrier. In such a case the owner is entitled to recover, if anything, the value of the goods at the place of delivery.

In an action to recover the value of a car of potatoes it appeared that the suit was brought against the first of a series of connecting carriers. The bill of lading issued by the defendant company acknowledged the receipt of the goods "in apparent good order." The evidence showed that upon arrival at the end of the line of the defendant the end sill of the car in which the potatoes had been transported was found to be so broken that the connecting carrier declined to receive it. The potatoes were then loaded by the defendant into another car and were very much bruised, skinned and cut when delivered to the connecting carrier. There was evidence that the manner in which the potatoes were transferred from the broken car and the implements used in the work were not proper, and were likely to produce the very condition in which the property was found to be when it arrived at its final destination. The contract did not in express terms confine liability to injuries arising from negligence. It provided, however, that no carrier "shall be liable for any loss thereof, or damage thereto by causes beyond its control." *Held* (1), that the evidence offered by the plaintiff as to the damaged condition of the potatoes at the end of defendant's line, imposed the burden on the defendant to prove that it was not guilty of negligence, or to show that the injuries were caused by some cause beyond its control; (2) that the case was for the jury, and that a judgment and verdict for the plaintiff should be sustained.

When inanimate property, of a character which is not by natural laws marked for early decay, is properly prepared for shipment when delivered to the carrier, and upon reaching its destination is found to be badly damaged, a reasonable inference arises that it was not transported with ordinary care. The injury in such a case is evidence of negligence, but it is only evidence and the inferences are to be drawn by the jury.

Argued Oct. 11, 1904. Appeal, No. 250, Oct. T., 1903, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1902, No. 3728, on verdict for plaintiff in case of James L. Rhymer v. Delaware, Lackawanna and Western Railroad Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

346     RHYMER v. D., L. & W. RAILROAD CO.

Statement of Facts—Opinion of the Court. [27 Pa. Superior Ct.

Assumpsit against carrier to recover the value of a cargo of potatoes.   Before BARRATT, J.

The facts appear by the opinion of the Superior Court.

At the trial the court refused to admit evidence as to the value of the potatoes at Sherburne, New York, the place of shipment.

Plaintiff presented these points:

The burden is on the defendant to show that the damaged condition of the potatoes was not due to the negligence and carelessness of the defendant or its employees.  *Answer :* That I affirm. [4]

If the jury believes that the damaged condition of the potatoes was due to the negligence of the defendant or its employees, the verdict should be for the plaintiff.  *Answer :* That I affirm. [5]

Verdict and judgment for plaintiff for $310.96.   Defendant appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (4, 5) above instructions, quoting them.

*James F. Campbell,* for appellant, cited : Keller v. B. & O. R. R. Co., 196 Pa. 57 ; Davenport Co. v. Penna. R. R. Co., 173 Pa. 398 ; Buck v. Penna. R. R. Co., 150 Pa. 170 ; Penna. R. R. Co. v. Raiordon, 119 Pa. 577 ; R. R. Co. v. Reeves, 77 U. S. 176.

*Charles J. Sharkey,* with him *F. Pierce Buckley,* for appellee, cited : Needy v. Western Md. R. R. Co., 22 Pa. Superior Ct. 489 ; Ruppel v. Allegheny Valley Ry. Co., 167 Pa. 166 ; New York Cent., etc., R. R. Co. v. Eby, 22 W. N. C. 92.

OPINION BY PORTER, J., March 14, 1905 :

The plaintiff brought an action of assumpsit to recover the value of a car load of potatoes, which had been shipped over the line of the defendant company from Sherburne, New York, consigned to the plaintiff at Philadelphia, and which he declined to receive, upon its arrival, alleging that the goods were in a damaged condition.   The bill of lading, issued by the defendant company, under which the property was shipped,

stipulated that, as to each carrier over any portion of the route, the service to be performed under the contract should be subject to certain conditions, of which the following are material, viz: " No carrier or party in possession of all or any part of the property herein described, shall be liable for any loss thereof or damage thereto, by causes beyond its control; . . . . or by leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet, or decay ; or from any cause if it be necessary or is usual to carry such property upon open cars." " Every carrier shall have the right in case of necessity, to forward said property by any railroad or route between the point of shipment and the point to which the rate is given." " No carrier shall be liable for loss or damages not occurring on its own road or its portion of the through route, nor after said property is ready for delivery to the next carrier or to the consignee." " The amount of any loss or damage for which any carrier becomes liable shall be computed at the value of the property at the place and time of shipment under this bill of lading, unless a lower value is agreed upon or is determined by the classification upon which the rate is based, in either of which events such lower value shall be the maximum price to govern such computation."

There seems to have been no contention between the parties in the court below as to the power of a connecting carrier to enter into a special contract under which his liability for loss or injury to the goods is to be determined, nor as to the lawful limits of that power. The parties tried the case upon the theory, and here agree, that under the special contract in this case the defendant is liable for loss or injury occurring through negligence, and from no other cause. The clause of the contract limiting the amount of the recovery to the value of the goods at the point of shipment is invalid as against a loss arising from the negligence of the carrier : Ruppel v. Allegheny Valley Railway Co., 167 Pa. 166. The right of the plaintiff to recover having been conceded to rest solely upon the ground of the negligence of the defendant, he was entitled to recover, if anything, the value of the goods at the place of delivery, and the first specification of error is dismissed.

The route of shipment was over the line of the defendant company to Phillipsburg, New Jersey ; thence over the line of

the Central Railroad Company of New Jersey to Bethlehem, Pennsylvania, and thence by the Philadelphia & Reading Railway Company to Philadelphia. The shipment was made from Sherburne on September 28, 1901, in D. L. & W. car No. 6456, and when the goods were tendered to the plaintiff in Philadelphia, on October 10, 1901, they were in D. L. & W. car No. 22804. The plaintiff offered in evidence the bill of lading issued by the defendant company, which acknowledged the receipt of the goods " in apparent good order; " and then produced testimony as to the condition of the goods at the time he declined to receive them from the carrier. The plaintiff testified, upon the latter point, that, " The potatoes were all thrown in promiscuously. As a general thing in loading cars they are more uniform, but these were all thrown up in great heaps. They were all cut up and bruised, and were in a deplorable condition.in every way, showing evidence of very hard usage and that they had been misused." He also testified that the potatoes arrived in Philadelphia in a car different from that in which they had been loaded at Sherburne. Thomas W. Gray, to whom the potatoes were sold by the agent of the Philadelphia & Reading Railway Company, testified that the potatoes had been handled very roughly, " and they had been shoveled and cut up. There were stones, sticks, straw and everything else mixed all through the car, and they were not loaded like other cars that come in the yard. They were just in heaps and piles, just thrown in and they looked to me as if they had been walked all over, tramped over." The plaintiff relied entirely upon the bill of lading as evidence of the condition of the goods at the time of the shipment, and having produced the testimony above quoted as to the condition of the property at the time of its arrival in Philadelphia, and the value thereof at the place of destination, rested. The car had remained in the outer freight yard at Philadelphia for about eight days, and there was a conflict of evidence as to whether the Philadelphia & Reading Railway Company had notified the plaintiff of the arrival of the consignment, but there was no evidence that the delay worked any injury to the property, while it was established as an undisputed fact that the plaintiff had given to the railroad company a written order to hold all his goods at the outer station,

during that period, until by him ordered to be brought into the city.

Had the case gone to the jury upon the testimony produced by the plaintiff alone, it would have been the duty of the court to instruct the jury as to the liability of the several carriers engaged in the various stages of the transportation : Camden & Amboy Railroad Co. v. Forsyth, 61 Pa. 81 ; Keller v. B. & O. Railroad Co., 174 Pa. 62, and 196 Pa. 57 ; but the question of the defendant's liability would still, under the evidence, have been for the jury : American Express Co. v. Second National Bank, 69 Pa. 394 ; New York Central, etc., Railroad Company v. Eby, 22 W. N. C. 92 ; 9 Sadler, 375.   The testimony produced by the defendant eliminated from the case all questions as to which, if any, of the several carriers was responsible for the damaged condition in which the potatoes arrived at their destination.

That testimony established the following facts : The car No. 6456, containing the potatoes, was transported by the defendant company to Phillipsburg, New Jersey, and, on the evening of September 30, tendered to the Central Railroad of New Jersey, and was by that company refused because it had a broken end-sill.   The car was opened and the contents examined by Gaylord B. Sheldon, who at that time was the agent of the defendant company.   He testified that he found the potatoes " very much bruised up, skinned, and more or less rotten, and I noticed some were cut more or less before the car was touched ; " that he, acting for the defendant company, procured men and had the potatoes transferred from the car in which they were to the car No. 22804, potato shovels or scoops made of wire and a wheelbarrow being used for the purpose of making the transfer, and the car last mentioned was, on October 2, delivered to the Central Railroad of New Jersey.   The witness was examined in detail as to the means used and the manner in which the potatoes were transferred from one car to the other.   The testimony of the other witnesses called by the defendant was in harmony with that above quoted.   It thus appeared that at the time the goods were delivered by the defendant to the connecting carrier, they were in the very condition upon account of which the plaintiff declined to receive them upon their arrival in Philadelphia.   The facts established

by the evidence rendered it unnecessary for the court to instruct the jury as to the duties and liabilities of the connecting carriers.   The bill of lading issued by the defendant company was prima facie evidence that the property was in good condition when delivered to the carrier, and upon arrival at the end of the line of the initial carrier, the end-sill of the car in which they had been transported was found to be so broken that the connecting carrier declined to receive it, the potatoes were by the defendant company loaded into another car, and were very much bruised, skinned and cut when delivered to the connecting carrier.   The damaged condition could not have been brought about by any quality inherent in the property ; to produce such results some external agency must have supervened.   The plaintiff offered testimony in rebuttal which would have justified a finding that the manner in which the potatoes were transferred from the broken car, and the implements used in the work, were not proper, and were likely to produce the very condition in which this property was found to be when it arrived at its final destination.   When an injury to property is of the character complained of in this case, if no explanation whatever is given as to how the injury occurred, a presumption of negligence arises which is sufficient to justify a recovery in cases where there is no other proof than of the delivery of the goods to the carrier in good condition, and their arrival at the point of destination in a damaged condition : Express Company v. Sands, 55 Pa. 140 ; Grogan & Merz v. Express Company, 114 Pa. 523 ; Pennsylvania Railroad Co. v. Raiordon, 119 Pa. 577 ; Railroad Co. v. Miller, 87 Pa. 395 ; Patterson v. Clyde, 67 Pa. 500 ; Phoenix Pot-Works v. Railroad Co., 139 Pa. 284 ; Buck v. Pennsylvania Railroad Co., 150 Pa. 170 ; Davenport v. Penna. Railroad Co., 10 Pa. Superior Ct. 47 ; Needy v. Western Maryland Railroad Co., 22 Pa. Superior Ct. 489.   The second, third, fifth, sixth and seventh specifications of error are dismissed.

The affirmance by the court of the first point submitted by the plaintiff, which was in these words : " The burden is on the defendant to show that the damaged condition of the potatoes was not due to the negligence and carelessness of the defendant or its employees " is the subject of the fourth specification of error.   When a special contract of shipment exempts

the carrier from all liability for injury to the goods, or expressly limits it to liability for injuries caused by his negligence; mere proof of some change in the condition of the property while in the hands of the carrier which has diminished its value, unless that change in the condition is of such a character as to fairly indicate negligence in the transportation, is not sufficient to warrant a recovery from the carrier for the loss: Penna. Railroad Company v. Raiordon, 119 Pa. 577; Ruppel v. Allegheny Valley Ry. Co., 167 Pa. 166; Patterson v. Clyde, 67 Pa. 500. When an animal, shipped under such a contract, dies in transitu, without any visible cause, in the absence of proof to the contrary the fair inference is that the death is due to natural causes. When animals are shipped under a special contract that the shipper will load and take care of them while being transported and see that all doors and openings in the car are at all times so closed and fastened as to prevent escape, and unload them upon arrival at their destination, there can be no recovery against the carrier upon mere proof that some of the animals escaped, in the absence of all evidence as to the occasion of the loss: Needy v. Railroad Company, 22 Pa. Superior Ct. 489. When perishable property is shipped under such a contract, and through the operation of natural laws becomes worthless, there can be no recovery for the loss in the absence of evidence of negligence, or failure to forward with reasonable dispatch: Davenport v. Penna. Railroad Company, 10 Pa. Superior Ct. 47. When inanimate property, of a character which is not by natural laws marked for early decay, is properly prepared for shipment when delivered to the carrier, and upon reaching its destination is found to be badly damaged, a reasonable inference arises that it was not transported with ordinary care. The injury in such a case is evidence of negligence, but it is only evidence and the inferences are to be drawn by the jury. The plaintiff proves the facts from which the inferences are to be drawn, and thus meets the burden which is in the first instance upon him to establish the negligence of the defendant: Phœnix Pot-Works v. Railroad Company, 139 Pa. 284; Buck v. Pennsylvania Railroad Co., 150 Pa. 170; the complaint of the appellant against this instruction is confined to the imposition of the burden of proof. The instruction cannot be accepted as a correct statement of the general rule

applicable in all actions against a carrier, when under the terms of the contract the right of recovery is limited to losses arising from negligence. Whether under the undisputed facts of this particular case the instruction was erroneous is a different question. Assuming, for the present, that under the contract in this case the burden was in the first instance upon the plaintiff to establish the negligence of the defendant, the undisputed facts established by the evidence produced by the defendant had shifted the burden. When the consignment arrived at the point where it was to be delivered to the connecting carrier the potatoes were found to be very much bruised, skinned and cut, a condition indicating rough handling, and the car in which they were transported was so broken as to be unfit to proceed to the destination, and it became necessary to subject the goods to the chances of additional deterioration involved in transferring them to another car. There was not only evidence of an injury to the property, but the admitted fact of an accident to the car which the carrier had provided for the transportation. " If, for any reason, an injurious accident happens to, or by reason of, that which the carrier provides for the transportation, the law which imposes the exercise of the utmost care upon him, presumes the act to be due to the want of that care and puts upon him the duty of successfully relieving himself from that presumption:" Pennsylvania Railroad Company v. Raiordon, 119 Pa. 577; Buck v. Penna. Railroad Company, 150 Pa. 170; Needy v. Railroad Company, 22 Pa. Superior Ct. 489. The burden of proof was, under the undisputed facts of the case, shifted to the defendant.

The fourth specification of error is for another reason not well founded. The special contract in this case did not by its terms relieve the carrier from all liability for injury to the property, nor did it in express terms confine that liability to injuries arising from negligence. It did provide for total freedom from liability " if it be necessary or is usual to carry such property upon open cars;" but this property was not carried in an open car, nor was there any evidence that it was usual to so carry such property, and that clause is eliminated from consideration. It provided for exemption from liability from injuries arising from certain specific causes, viz: floods, fire,

quarantine, riots, strikes, leakage, breakage, chafing, loss in weight, changes in weather, heat, frost, wet or decay; but there can be no pretence that the condition in which this property was found to be could have been produced by any of these causes. If, therefore, the defendant was exempt from the general liability imposed by law upon carriers for injury to property while in course of transportation, it must have been under that clause of the special contract which provided that no carrier of this property, " shall be liable for any loss thereof or damage thereto, by causes beyond its control." Under such a clause in a shipping contract, it is sufficient in the first instance for the consignee to prove the loss or injury, without going further and proving the negative; that it did not occur under circumstances beyond the control of the carrier. The burden is upon the carrier to show that the loss or injury was within the restriction in his contract. When the exemption is claimed upon the ground that the loss was from a cause beyond the control of the carrier, it is incumbent on him to prove that due diligence and proper skill were used to avoid the loss or injury; that it was beyond his control: Whitesides v. Russell, 8 W. & S. 44; Humphreys v. Reed, 6 Wharton, 435; Hays v. Kennedy, 41 Pa. 378; Patterson v. Clyde, 67 Pa. 500.

The judgment is affirmed.

ORLADY, J., dissents.