# Smith *v.* Illinois Central Railroad Company, Appellant.

*Carriers—Common carriers—Railroads—Bill of lading—Draft—Negligence.*

Where a railroad company accepts a quantity of grain, and at a connecting point delivers it to a connecting line for transportation to the consignee, and at the point of connection an elevator company from whom the consignee purchased the grain assumes control of it, has the grain weighed, and sends the bill of lading with draft attached for an amount based on a much larger weight than the weight of the grain, and the consignee pays the draft in order to secure the grain, the elevator company which was guilty of the negligence which caused the loss is liable, and not the initial carrier.

Argued April 11, 1907.    Appeal, No. 77, April T., 1907, by defendant, from judgment of C. P. No. 2, Allegheny Co., July Term, 1902, No. 463, on verdict for plaintiff in case of J. W. Smith et al., trading as Smith & Company, v. Illinois Central Railroad Co.    Before RICE, P. J., HENDERSON, MORRISON, HEAD and BEAVER, JJ.    Reversed.

Appeal from judgment of justice of the peace.    Before FRAZER, P. J.

The opinion of the Superior Court states the case.

*Error assigned* was in refusing judgment for defendant non obstante veredicto.

*M. J. Hosack*, of *Hosack, Knox & Hosack*, for appellant. —The defendant was not guilty of negligence : Rickerson Roller Mill Co. v. Grand Rapids, etc., R. R. Co., 67 Mich. 110 (34 N. W. Repr. 269) ; Keller v. R. R. Co., 10 Pa. Superior Ct. 240 ; Seibert v. Ry. Co., 15 Pa. Superior Ct. 435.

*Robert M. Ewing*, for appellee.

OPINION BY MORRISON, J., May 13, 1907 :
In this action of assumpsit both parties requested binding

instructions, and the learned court gave a binding instruction in favor of the plaintiff, refusing defendant's motion, and thereafter refused judgment for the defendant non obstante veredicto. A proper disposition of the case seems to require a careful statement of the facts as they were proved and conceded.

The appellees are engaged in business in the city of Pittsburg and on April 15, 1901, they ordered a car load of oats from the Paxton Elevator Company of Kanakee, Illinois; the oats were shipped in car No. 13,398 of the Illinois Central Railroad Company from Tucker, Illinois, to Chicago, where they were transferred into car No. 7,445 of the Pittsburg, Fort Wayne and Chicago Railroad Company. When the oats reached Chicago they were weighed by the weighmaster of the Illinois Central Railroad Company and found to weigh 42,600 pounds. The oats were not weighed at Tucker, Illinois, when they were shipped by R. G. Risser, because there were no scales at that place, and the shipment was with "weight subject to correction." It is a conceded fact that the appellant company and the Pittsburg, Fort Wayne and Chicago Railroad Company delivered to the plaintiffs, at Pittsburg, Pennsylvania, the exact quantity of oats that were received at Tucker, Illinois. The appellant company carried the oats from the latter place to Chicago under a special contract in the bill of lading, relieving it from liability by delivering the said oats to the consignee, "if at a station on its own line, or to such carrier whose line may be part of the same route to the place of destination," it being distinctly understood that its responsibility shall cease when it delivers the same to the consignee or the carrier.

Under the proved and conceded facts, the appellees purchased the oats from the Paxton Elevator Company, and that company purchased them from R. G. Risser at Tucker, Illinois. We think the undertaking of the appellant company was to deliver the oats at Chicago to the order of the Paxton Elevator Company, notwithstanding the fact that the bill of lading, when it left Tucker, Illinois, contained the following, under marks and consignees : "Order of Paxton Elevator Co. Notify J. W. Smith, Pittsburg, Pa. Care Pittsburg & Fort Wayne & Chgo. Ry." If we are correct in this view, then it is clear that the appellant company fully performed its contract when

it delivered the oats to the Paxton Elevator Company by transferring the same into car No. 7,445 of the Pittsburg, Fort Wayne and Chicago Railroad Company. Our reasons for holding that the appellant company is not liable for anything happening after it delivered the oats at Chicago are the following: Smith & Company ordered and purchased the oats from the Paxton Elevator Company; that company received the bill of lading to Chicago and undertook to have the oats weighed by the board of trade weighmaster of Chicago; it also appears that the elevator company inserted, or caused to be inserted, in the bill of lading, the following items which were not therein when it reached Chicago, to wit: " Bulk Oats, 62780, into 7445 P, F. W. & C." The Paxton Elevator Company then drew a draft, dated April 26, 1901, for $531.48, on J. W. Smith & Company, Pittsburg, Pa., and attached thereto certificate of the board of trade weighmaster, dated March 28, 1901, "from car No. 13399 car E. L. to No. 61886 Net Weight 62780 contents corn." The draft and certificate, with the bill of lading, were then sent to a bank at Pittsburg and · Smith and Company could not, under the arrangement, get the oats until they paid the draft and secured possession of the bill of lading. In this connection, it should be noted that the appellant company weighed the oats at Chicago and took the receipt of the Pittsburg, Fort Wayne and Chicago Railroad Company therefor, which receipt plainly states, as to destination, J. W. Smith, Pittsburg, Pa., as to articles, bulk oats, weight, 42,600. This is conceded to be the correct weight of the oats. Now whether the Paxton Elevator Company actually inserted in the bill of lading the erroneous weight, or only forwarded the bill of lading containing it, to Smith & Company, it must be held responsible for the error because it either made it or ratified it. Smith & Company suffered no loss and had no cause of action against anybody until they were induced by the Paxton Elevator Company's draft, erroneous certificate of weight and erroneous weight in the bill of lading, to make the overpayment, at Pittsburg, for which this suit was brought. An additional reason for holding that the cause of action arose at Pittsburg, is that the appellees could not get the oats until they paid the draft and thus secured the bill of lading. This we think conclusively shows that until

the draft was paid, the title to the oats remained in the Paxton Elevator Company.

The learned counsel for the appellees practically concedes this position in his argument: " The bill of lading with a certificate of weight was attached to a draft for $531.48 and sent to a local bank in Pittsburg. The amount called for in the draft was a proper charge for 62,780 pounds of oats, and under the custom of shipments ' to order ' appellees were forced to pay the draft before they could secure the car of oats. There were but 42,600 pounds of oats in the car. Appellees had paid $171.80 too much and brought an action against the appellant to recover this sum." We think the conceded facts of this case justify the above concession, and that it conclusively fixes the title to the oats in the Paxton Elevator Company until the appellees paid the draft and secured the bill of lading. If we are correct in this conclusion, it follow that the appellees' cause of action arose in Pittsburg on the payment of the draft to the elevator company. There was no privity of contract between the appellees and R. G. Risser, from whom the elevator company purchased the oats at Tucker, Illinois. The appellees purchased the oats from the elevator company and paid that company therefor, and did not and could not receive the oats except on such payment.

It is an undisputed fact that the appellant company correctly weighed the oats at Chicago, and if the elevator company had relied on that weight and had sent with the draft the correct weighbill of April 24, 1901, for bulk oats, weight 42,600 pounds, the mistake, which injured the appellees, would not have occurred. It is interesting here to note the cause of the mistake. The elevator company, evidently, not being satisfied with the appellant company's weight, applied to the board of trade weighmaster of Chicago to weigh the oats in car No. 13,398. That weighmaster furnished the certificate attached to the draft, and it was dated March 28, 1901, and it was for 62,780 pounds of corn. Evidently, corn that had been in that car a month prior to appellee's purchase of oats.

The appellees are complaining of the negligence of the defendant company, but it seems to us that the payment of the draft of April 26, 1901, with a weighbill attached, dated March 28, 1901, for 62,780 pounds of corn, was a very negli-

gent act, in view of the fact that the appellees' purchase was oats and not made till April 15, 1901. We think the negligent act of the appellees in this respect ought, at least, to require them to look to the party making the mistake, the Paxton Elevator Company, for their damages.

We note that E. E. Carroll, station agent for the appellant railroad company at Tucker, Illinois, testified that he made the bill of lading for the oats, and that when it left his hands the words "into 7445 P. F. W. & C.," also the figures "62780" were not shown therein. This witness also testified that he only billed the car to Chicago, and did not bill it through to Pittsburg, and that he inserted, "Notify J. W. Smith & Company, Pittsburg, Pa.," at the request of R. G. Risser. It can readily be inferred that Risser had this done on the request and for the accommodation of the Paxton Elevator Company. When we consider the bill of lading, the weighing and delivery of the oats at Chicago, the conduct of the Paxton Elevator Company in accepting the bill of lading and inserting therein, or using it after the insertion, of the figures "62780" and "into 7445 P. F. W. & C.," and then forwarding the draft and erroneous certificate of weight and erroneous bill of lading to the bank at Pittsburg, we have no difficulty in reaching the conclusion that the obligation of the appellant company ended when it correctly weighed the oats and delivered the same to the connecting line at Chicago. This view of the case relieves it from the contention of the counsel for the appellees that the appellant company is liable for the mistake, and that it could not limit its liability by the language above quoted from the bill of lading. The counsel quotes from an alleged act of assembly of Illinois : "That whenever any property is received by a common carrier to be transported from one place to another, within or without the state, it shall not be lawful for such carrier to limit his common-law liability, safely to deliver such property at the place to which the same is to be transported, by any stipulation or limitation expressed in the receipt given for such property." If the above is the statute of Illinois, which we do not know, as it was not put in evidence, it is sufficiently answered by our conclusion that the undertaking of the appellant company was only to transport the oats to Chicago and deliver the same to the Pittsburg, Fort Wayne &

Chicago Railroad Company, and that the Paxton Elevator Company accepted and ratified such delivery.

This view of the case renders it unnecessary to discuss the authorities cited by the counsel, to wit: Muschamp v. Lancaster, etc., Ry. Co., 8 Meeson and Welsby's Reports, 421; Illinois Central R. R. Co. v. Frankenberg, 54 Ill. 88; Baltimore & Philadelphia Steamboat Company v. Brown, 54 Pa. 77; Wabash, etc., Ry. Co. v. Jaggerman, 115 Ill. 407; Bigelow on Estoppel, 475, and Brooke v. N. Y., L. E. & W. R. R. Co., 108 Pa. 529.

But if we view the appellees' cause of action as a Pennsylvania one, the law does not seem to be here as the counsel contends it is in Illinois. In Keller v. Railroad Co., 10 Pa. Superior Ct. 240, we held, as stated in the syllabus : " In an action of assumpsit against a carrier, where the liability of the carrier ceased at its freight station, under the written contract, and no negligence was alleged up to that point, and the goods were then and there delivered to a connecting company, in order to a recovery, the burden is upon the plaintiff to overthrow the written provisions of the contract evidenced by the bill of lading." That case was appealed to the Supreme Court, and was affirmed in Keller v. Railroad Co., 196 Pa. 57. The latter case, upon the facts in the present one, would exempt the appellant company from liability, even if the oats had been damaged or entirely destroyed while in transportation over the Pittsburg, Fort Wayne & Chicago Railroad. But we have no such question in the present case. It is a conceded fact that the exact quantity of oats shipped by Risser from Tucker, Illinois, were safely carried from there to Chicago by the appellant company, and from Chicago to Pittsburg by the connecting line, and delivered in good order to the appellees at Pittsburg. It, therefore, seems very clear to us that if the appellees paid too much money on the draft, on the facts already referred to, they have no just ground of complaint against either of the railroad companies.

In Am. Express Co. v. Second National Bank, 69 Pa. 394, it was held : " That at most the companies were liable as carriers only to the end of their own route, and afterwards were forwarders, responsible only for reasonable care and diligence in selecting proper carriers." See also Camden & Amboy Railroad Co. v. Forsyth, 61 Pa. 81.

In the present case, the appellant met its full obligation by promptly and safely transporting the oats to Chicago, and there selecting a forwarding company which promptly and safely delivered the same oats to appellees at Pittsburg. This must be so because the elevator company accepted the bill of lading to Chicago, and from there to Pittsburg it assumed ownership and control of the oats until they were paid for by Smith & Company.

The assignments of error are sustained, judgment reversed, and judgment is now granted in favor of defendant non obstante veredicto.