# Needy, Appellant, *v.* Western Maryland Railroad Company.

*Railroads—Common carriers—Loss of goods—Negligence—Burden of proofs— Usage.*

In an action against a railroad company to recover the value of seven hogs, plaintiff testified that he shipped eighty-two hogs, and that only seventy-five arrived at the destination and were delivered to the consignee. Plaintiff then rested without offering to show how the loss occurred. The hogs were shipped under a special contract at a lower rate of freight than that ordinarily charged. Under this contract plaintiff undertook to load and take care of the hogs while being transported, and to unload the same, also to inspect the body of the car in which they were to be transported and to satisfy himself that it was in proper order and condition, and also to see that all doors and openings in the car were at all times so closed and fastened as to prevent the escape therefrom of any of the hogs. *Held*, (1) that the burden of the proof was on the plaintiff to show negligence ; (2) that the court committed no error in giving binding instructions for defendant.

In such a case proof that it was customary for the defendant to ship hogs without any person accompanying, and that for many years it had accepted hogs from the plaintiff for shipment without requiring him to accompany them, was properly rejected for the reason that the rights and duties of the parties relative to that matter were fixed by the agreement.

Evidence of a usage contradicting the express terms of a contract is inadmissible.

Argued Oct. 20, 1902. Appeal, No. 1, Oct. T., 1902, by plaintiff, from judgment of C. P. Franklin Co., Feb. T., 1901, No. 98, on verdict for defendant in case of Samuel Needy v. Western Maryland Railroad Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Appeal from judgment of justice of the peace. Before JOHN STEWART, P. J.

The facts are stated in the opinion of the Superior Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Charles Walter*, with him *Gillan & Gillan*, for appellant.— It has long been settled, that in Pennsylvania a common carrier may not limit its liability for negligence. In so far as the special contract entered into by Needy with the defendant attempts to provide for limitation of liability in case a loss occurs through the defendant's negligence, it is void : Farnham v. Camden, etc., R. R. Co., 55 Pa. 53 ; American Express Co. v. Sands, 55 Pa. 140 ; Davenport v. Penna. R. R. Co., 10 Pa. Superior Ct. 47.

That a presumption of negligence arises against a carrier under special contract from the loss of goods during the course of transportation is held in these cases : Phœnix Pot Works v. Pittsburg, etc., R. R. Co. 139 Pa. 284 ; Buck v. Penna. R. R. Co., 150 Pa. 170 ; N. Y. Cent., etc., R. R. Co. v. Eby, 22 W. N. C. 92.

Since it is proper to prove a custom which relieves the carrier of its common-law liability, we think the plaintiff should have

been permitted to prove in the court below, a custom which would have relieved him of some of the duties imposed upon him by his contract with the carrier: McMasters v. Penna. R. R. Co., 69 Pa. 374.

*O. C. Bowers*, with him *W. U. Brewer* and *J. R. Ruthrauff*, for appellee.—We submit that the case at bar is ruled by the case of Penna. R. R. Co. v. Raiordon, 119 Pa. 577.

OPINION BY RICE, P. J., April 20, 1903:

The facts upon which the plaintiff claimed the right to recover were correctly and concisely stated in the charge of the learned judge of the common pleas as follows:

On September 15, 1900, the plaintiff consigned to the defendant company at Waynesboro, this county, for shipment to the Union Stock Yards, near Baltimore, Maryland, a lot of hogs. He testifies that they were eighty-two in number When the car in which they were shipped reached its destination, the hogs numbered seventy-five, and no more were delivered to the consignee. The plaintiff claims in this action to recover from the defendant company the value of these missing hogs. He has not offered to show how the loss occurred, nor has he attempted to account for it in any way. He offered evidence to show that he shipped eighty-two hogs, and that seventy-five only were delivered, and then rested, his contention being that upon this evidence alone, the law would presume that the loss resulted from the negligence of the defendant company, and that the latter could only escape liability by showing affirmatively that the loss did not occur through its negligence or the negligence of its employees.

We will add to this statement of the facts that the special contract under which the hogs were shipped contained the following clauses:

" That the said shipper is at his own sole risk and expense to load and take care of, and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same, and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto, except in the actual transportation of the same.

That the said shipper is to inspect the body of the car or

cars in which said stock is to be transported, and satisfy himself that they are sufficient and safe, and in proper order and condition, and said carrier or any connecting carrier shall not be liable on account of any loss of or injury to said stock, happening by reason of any alleged insufficiency in, or defective condition of, the body of said car or cars.

That the shipper shall see that all doors and openings in said car or cars, are at all times so closed and fastened as to prevent the escape therefrom of any of the said stock, and said carrier or any connecting carrier shall not be liable on account of the escape of any of the said stock from said car or cars."

It is well settled in Pennsylvania that a common carrier may by special contract limit his liability for loss of, or injury to, goods intrusted to him for carriage excepting for loss or injury resulting from his own or his servants' negligence. The difficult question is as to the burden of proof. It has been held that where, in case of such contract, the carrier accounts for the loss or injury in a way not to implicate himself in a charge of negligence, this is a sufficient defense, unless the plaintiff prove negligence. Hence the burden of proof was on the plaintiff where the goods were transported by the carrier to the place of destination, put into its shed on its wharf where it had four watchmen, and before the plaintiff had notice of their arrival or opportunity to remove them, a fire from an unknown cause took place in its boat lying at the wharf (the boat being fully manned), which consumed the goods in the shed: Farnham v. Camden & Amboy R. R. Co., 55 Pa. 53. So, in an action to recover for the loss of a horse shipped under a limited-liability contract, where there was no proof of negligence and the sole basis for a presumption of negligence was the fact that the horse was found dead in the car upon its arrival at the point of destination, it was held that the plaintiff could not recover: Penna. R. R. Co. v. Raiordon, 119 Pa. 577. In the case of a carload of perishable fruit and vegetables shipped in very hot weather, under a bill of lading exempting the carrier from liability for loss or damage by causes beyond its reasonable control, "or by any of the causes incident to transportation such as chafing, heating, freezing . . . . or any other reason not directly traceable to the negligence of the carrier's servants," it was held not sufficient, in order to sustain a verdict in his favor,

that the plaintiff show, that the fruit and vegetables were sound when shipped, and that when they reached the point of destination and were ready for delivery they were rotten and unmarketable. " He must prove a failure to forward with reasonable dispatch or other facts justifying a finding of negligence, and that the negligence caused the damage complained of : " Davenport v. Penna. R. R. Co., 10 Pa. Superior Ct. 47. The rule as stated in Farnham v. Camden & Amboy R. R. Co., supra, has been applied or distinctly recognized in other cases, amongst which may be mentioned, Patterson v. Clyde, 67 Pa. 500, Buck v. Penna. R. R. Co., 150 Pa. 170, at p. 177, and Frank v. Central R. R. of N. J., 9 Pa. Superior Ct. 129, at p. 135. But there is a plain and substantial distinction between a case where the carrier is able to account, and does account, for the loss or injury without apparent negligence, and a case where the goods never arrived at the destination and the loss is wholly unaccounted for. Ordinarily, one who delivers goods to a carrier parts entirely with his possession and control over them, and knows nothing of what takes place during the carriage, while the carrier has possession and control over them, and is supposed to know, or have the means of knowing, what happened to them, and if they are lost or injured, how it occurred. It was held in Grogan v. Adams Express Co., 114 Pa. 523, following American Express Co. v. Sands, 55 Pa. 140, that in such case, that is, where the loss is wholly unaccounted for, a presumption of negligence arises which the defendant must rebut in order to escape liability. It is urged that this case rules the case at bar, and we agree that it would do so were it not for the special provisions of the contract under which the plaintiff voluntarily decided to ship the hogs at a reduced rate of freight, in preference to shipping them at a higher rate, which he acknowledged he had the option of doing, and thereby receiving the security of the defendant and connecting companies as common carriers. Amongst other things, he undertook to load and take care of the hogs while being transported, and to unload same, also to inspect the body of the car in which they were to be transported and to satisfy himself that it was in proper order and condition, and also to see that all doors and openings in the car were at all times so closed and fastened as to prevent the escape therefrom of any of the hogs. It is not con-

tended that such provisions in a contract with a common carrier are invalid, and it is an admitted fact that the plaintiff wholly omitted to perform his duties under the contract relative to the care of the hogs and the car while being transported.   We do not say that the contract had the effect of relieving the defendant from all duty relative to these matters; but we think it clear that the loss cannot be imputed to the negligence of the carrier in the absence of all evidence as to the occasion of the loss, or of the omission of any duty on the part of the carrier, where it is as reasonable to infer that it was attributable to the admitted neglect of the duties devolving upon the shipper.   If the contract on the part of the plaintiff related to something entirely apart from the care of the animals during transportation, for example, as was the case in Willock v. Penna. R. R. Co., 166 Pa. 184, to insure them for the benefit of the carrier, an entirely different question would be presented.   It might well be that if such were the case for decision the rule as to the burden of proof laid down in the Sand's case and the Grugan case would apply, but in view of the probable relation between the plaintiff's admitted neglect of his duties and the loss, we are clearly of opinion that the burden of proof rested on him.   We know of no Pennsylvania case exactly in point, but outside of this commonwealth the weight of authority seems to be in favor of the conclusion we have reached.   See 5 Am. & Eng. Ency. of Law (2d ed.), p. 357, and cases there cited, especially Terre Haute, etc., R. R. Co. v. Sherwood, 132 Ind. 129 (31 N. E. Repr. 781), where the question is exhaustively considered.

Proof that it was customary for the defendant to ship hogs without any person accompanying, and that for many years it had accepted hogs from the plaintiff for shipment without requiring him to accompany them, was properly rejected for the reason that the rights and duties of the parties relative to that matter were fixed by the agreement.   An established custom may often be understood as forming part of a contract and be referred to in aid of its construction, but evidence of a usage contradicting the express terms of a contract is inadmissible.

All the assignments of error are overruled and the judgment is affirmed.