# Leh, Appellant, *v.* Delaware, Lackawanna & Western Railroad Company.

*Carriers—Common carriers—Carriers of live stock—Special contract—Pleadings—Evidence—Allegata and probata.*

Where a shipper contracts with the initial carrier for the transportation of a carload of horses at a special rate and subject to certain limitations as to the liability of the carrier, and this contract covers the transportation of the horses over all the intervening lines to the point of destination, and the shipper, after a loss sustained, brings an action against a connecting carrier to recover on the common-law liability of such carrier, and the existence of the special contract is made to appear in the development of the plaintiff's case, the court commits no error in directing a compulsory nonsuit against the plaintiff. In such a case the allegata and probata do not accord, and the whole foundation of the action fails.

Argued Dec. 6, 1905. Appeal, No. 182, Oct. T., 1905, by plaintiff, from order of C. P. Northampton Co., Feb. T., 1903, No. 71, refusing to take off nonsuit in case of M. H. Leh v. The Delaware, Lackawanna & Western Railroad. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for injuries to live stock. Before SCHUYLER, P. J.

The facts are stated in the opinion of the Superior Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was in refusing to take off nonsuit.

*Calvin F. Smith*, for appellant.—That the burden of proof rested on the common carrier to relieve itself of the charge of default or neglect to carry the carload of horses with reasonable dispatch, in the absence of any proof of special contract limiting liability, after due proof of injuries happening to the horses during transportation; and therefore the court below erred in refusing to take off the judgment of compulsory nonsuit.

*W. S. Kirkpatrick*, of *Kirkpatrick & Maxwell*, for appellee.—If it appear by plaintiff's evidence that a special agreement

exists, even though not pleaded, it must be produced or accounted for and its contents proved, for the purpose of seeing whether it has been performed by the plaintiff, and whether the stipulated time and mode of payment were such as to warrant a recovery : Abbott's Trial Evidence, page 362, section 9.

Parol evidence cannot be given of a fact, in relation to which there exists a contract in writing : McKinney v. Lessee of Leacock, 1 S. & R. 27.

OPINION BY ORLADY, J., March 12, 1906 :

The plaintiff, a dealer in horses, brought this action of trespass to recover damages from the defendant company on its common-law liability for failure to transport with due care and dispatch a carload of horses.   The statement alleges a delivery on September 5, 1902, of a carload of nineteen horses in good condition in " Car C. C. C. C. No. 2249," by the L. S. & M. S. R. Company to the defendant company at Buffalo, N. Y., a detention of the car at Buffalo until September 7, and a final delivery at Nazareth, Pa., on September 8, in so injured and unsatisfactory a condition, that one horse died within a few days thereafter, and several others were made sick by reason of their negligent transportation.

On the trial the plaintiff testified that on September 3, he had personally shipped the nineteen horses at Indianapolis, Ind., consigned to Nazareth, Pa.   On cross-examination it was elicited that he had made a contract for the shipment of these horses with the C. C. & St. L. Railroad Company, which contract was in writing and signed by him.   The contract was shown to him (exhibit No. 2) and he identified his signature as genuine.   And admitted that it was upon that contract the horses were directed to be shipped, and were in fact delivered to the first carrier, after being signed by him at Indianapolis ; and further, that there was nothing said outside of the contract.   Exhibit No. 2 was before the court for its inspection, and on motion a nonsuit was directed, which the court subsequently refused to lift.

We are met at the threshold of the case with the fact, by the plaintiff's admission, that he had in writing contracted with a common carrier for the transportation of this carload of horses from Indianapolis, Ind., to Nazareth, Pa., at a special rate, and

subject to certain limitations as to the liability of the carrier. With this special contract in full force, he had ignored it, and brought this action to recover on the common-law liability of the carrier.    It is not material to the plaintiff that the admission was made while he was making out his case, and was not developed as matter of defense.    Had the latter course been adopted, and had the exhibit No. 2 been formerly offered and received in evidence as a part of the defendant's case, a motion for binding instruction would have reached the same result, so far as the plaintiff's right to recover under his statement of claim and the evidence offered to support it.

The effect to be given to it is purely a question of law, and is before this court for its inspection in the same manner as it was in the court below.    The contention of the plaintiff is, that inasmuch as the defendant company accepted the horses for transportation at Buffalo, N. Y., to Nazareth, Pa., the relation of shipper and common carrier for hire was established, and that the defendant company, having acted as a common carrier, cannot evade its common-law liability.    The answer to this argument is found in his own testimony and his special contract.    The consignment was from Indianapolis, Ind., to Nazareth, Pa., by the original carrier and by connecting carriers, which were indicated by a stamp or imprint on the face of the contract by the initials L. S. & M. S. (for Lake Shore & Michigan Southern), and D., L. & W. (Delaware, Lackawanna & Western) railroads.    No advance charges were paid at the point of shipment, and after delivery to the original carrier, the plaintiff returned to his home at Nazareth, Pa., by passenger trains, so that he did not see, nor give further attention to, the horses until their arrival at the point of destination.

The contract for carriage embraced the whole distance and over all of the intervening railroads.    Exhibit No. 2 is entitled, " The uniform limited liability live-stock contract for the Cleveland, Cincinnati, Chicago and St Louis Ry. Co."    By its terms, which, according to the plaintiff's testimony, are the only terms upon which he delivered the carload of horses to the first carrier, he acknowledged that " he had his option of shipping the above described live stock at a higher rate of freight according to the official tariffs, classifications and rules of said carrier and connecting carriers, and thereby receiving

the security of the liability of the said carrier, and connecting railroad and transportation companies, as common carriers of the said live stock upon their respective roads and lines, but has voluntarily decided to ship the same under this contract at the reduced rate of freight above first mentioned."

The question is, has the plaintiff in making out his case shown such a variance in his statement of his claim and the evidence in the case as to justify the nonsuit? Is his right of action to recover on the common-law liability of the defendant company affected by the terms of his written contract, which is a radical modification of his common-law right, and which was executed by him for special considerations?

As stated by Judge COULTER in Cunningham v. Shaw, 7 Pa. 401: "It is material to observe that the plaintiff had shown by his own evidence that there did exist a counterpart of the contract on his part, which he would not produce. It is the province of courts to decide upon light and knowledge, and they will not grope their way in the dark and under a cloud, when the plaintiff has in his possession and power, a light that would dispel them, but refuses to show it. . . . This corresponds to the just and pervading rule that the plaintiff, who seeks to take money from the defendant, ought to show a prima facie case, clear of all obstruction, according to the material parts of his own contract—parts which might interdict his right, and completely discharge the defendant. The presumption of the law is always against a party who withholds testimony in his power, bearing directly on his case."

Ordinarily, the burden of proof as to any limitations of common carrier law liability is matter of defense : Schaeffer v. P. & R. R. R. Co., 168 Pa. 209. But here we have the direct admission from the plaintiff himself, that the special contract was made, and that it included the same subject-matter for the whole distance from consignment to destination. The plaintiff did not seek to amend his statement, so that the question is purely one of law, on the effect to be given to his own evidence in support of his statement of claim. It must be conceded that the special contract differed in a fundamental manner from the one laid in the statement. By the common law, the carrier is an insurer of the goods intrusted to him, excepting as damaged by the act of God, or a public enemy : Farnham v. Camden &

Amboy R. R. Co., 55 Pa. 53 ; Trace v. Penna. R. R. Co., 26 Pa. Superior Ct. 466. But, it is as well settled that a common carrier may, by special contract, limit its liability for loss of or injury to goods intrusted to it for carriage, excepting for loss or injury, resulting from its own or its servants' negligence : Needy v. Western Maryland Railroad Co., 22 Pa. Superior Ct. 489 ; Allam v. Penna. R. R. Co., 183 Pa. 174.

It is said in Ben Franklin Fire Ins. Co. v. Flynn, 98 Pa. 627 : " In our times the severe rules of pleading find but little encouragement and even so far back as the case of Repsher v. Shane, 3 Yeates, 575, this doctrine of variance was not very strictly applied. Following in the track of that case are many later cases like it. Upon the whole, the principle seems to be that the matter given in evidence must agree with that set forth as the cause of action, in those allegations which are an inseparable and characteristic part of it, and determine its identity.

If there is any allegation which may be stricken out without impairing the legal cause of action, and which is therefore no necessary legal part of it, such need not be proved, being surplusage : Gibbs v. Cannon, 9 S. & R. 198. The case before us is quite the reverse of one in which matter that is mere surplusage is found in the statement. Here we have it disclosed by the plaintiff that his suit is not founded upon his real cause of action, but upon an entirely different one, which he admits he has voluntarily substituted instead of the implied one furnished by common law. No reasonable complaint can be made to requiring a plaintiff to set forth a concise statement of his claim sufficiently specific to enable the defendant to plead understandingly and with full knowledge of every claim which can be made against it or question which can be raised under it at the trial. " As to all matters of substance, completeness, accuracy and precision, are as necessary now to a statement as they were before to a declaration in the settled and time-honored forms : " Fritz v. Hathaway, 135 Pa. 274. In order to support any action the cause of it must be alleged, the plaintiff does not recover according to the probata, but secundum allegata et probata, and the contract must be always stated, is the declaration of the court in Pumeroy v. Bruce, 13 S. & R. 186.

The text-writers and decisions agree that the contract must

be stated correctly, and if the evidence differs from the statement, the whole foundation of the action fails ; the contract is entire in its nature, and must be proved as laid : 1 Chitty's Pleadings, 305–309.    Not only must the declaration set out a wrong, and the evidence show a wrong, but the wrong shown must be the wrong alleged : Hennessy v. Anstock, 19 Pa. Superior Ct. 644.

The substantial purpose of the plaintiff's statement is to apprise the defendant of the nature of the charge against him, and in the event of a recovery to enable him by reference to the record itself to plead the judgment in bar to a second action for the same cause : Bristow v. Wright, 1 Sm. L. C. 1417, and notes.    No reason has been suggested to affect in any way the validity of the contract made by the plaintiff at Indianapolis, and, as it covered the transportation of the horses over all the intervening lines to the point of destination, he cannot proceed piecemeal against the several carriers under their common-law liability while his special contract involved the whole distance. He cannot abandon the express contract and resort to an implied one ; the one voluntarily made by him must be the measure of his rights and liabilities.    The defendant had a right to be advised by the pleadings in advance of the trial of the substantial terms and conditions of the contract under which its liability to a judgment was sought to be enforced : Steph. Pl. 118 ; Johnson v. Robinson Consolidated Mining Co., 5 L. R. A. 769, and notes.    The variance was fatal in showing that the plaintiff had a special contract, which waived the liability of the carrier as to the cause of action laid in his statement, and the nonsuit was properly entered for that reason.

The judgment is affirmed.