## Stewart v. Baltimore & Ohio Railroad Company, Appellant.

*Common carriers—Carriers of live stock—Liability for negligence—Contract.*

A contract containing a stipulation limiting a carrier's liability for negligence, if made in one state, but with a view to its performance in one or more other states, will be construed in accordance with the law where the negligent breach, causing an injury, occurs. Although such a limitation of liability is prohibited in Pennsylvania, yet the courts of this state will enforce the stipulation if the injury has occurred in a state where the contract is valid; but if the injury has taken place within the limits of Pennsylvania, the courts here will declare the contract null and void.

Where a shipper undertakes the duty of feeding and watering a carload of mules and starts with the car for that purpose, but at a divisional point where a new train is made up becomes separated from the car and fails to find it before it has started, and thereafter the carrier fails to feed and water the animals, except at one point where it was improperly done, and as a result some of the mules are dead when the car reaches its destination, and others are injured so as to depreciate their market value, the question of the carrier's negligence, and of the shipper's contributory negligence in losing track of the car at the divisional point, are for the jury.

Argued May 5, 1908. Appeal, No. 221, April T., 1908, by defendant, from judgment of C. P. Somerset Co., Feb. T., 1906, No. 77, on verdict for plaintiff in case of Russell S. Stewart v. Baltimore & Ohio Railroad Company. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Affirmed.

Trespass to recover damages for loss on shipment of live stock.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $984. Defendant appealed.

*Errors assigned* were answers to points quoted in the opinion of the Superior Court.

*W. H. Koontz*, with him *J. G. Ogle*, for appellant.—When, in an action to recover for property (live stock) lost in transit, it does not appear in evidence that the loss resulted from such an injurious accident, the presumption of negligence on part of defendant, does not arise and the burden of proving it remains with the plaintiff: Penna. R. R. Co. v. Raiordon, 119 Pa. 577; Fairchild v. R. R. Co., 148 Pa. 527; Buck v. R. R. Co., 150 Pa. 170; Allam v. R. R. Co., 183 Pa. 174; Roos v. R. R. Co., 199 Pa. 378; Crary v. R. R. Co., 203 Pa. 525; Needy v. R. R. Co., 22 Pa. Superior Ct. 489; Grieve v. Illinois Cent. R. R. Co., 9 Am. & Eng. R. R. Cases (N. S.), 669; Hart v. Penna. R. R. Co., 112 U. S. 331 (5 Sup. Ct. Repr. 151); Leh v. R. R. Co., 30 Pa. Superior Ct. 396.

*Ernest O. Kooser,* for appellee.—Appellee contends this is a case for application of the rule that a contract releasing a common carrier from liability for its own negligence, is no defense: Powell v. R. R. Co., 32 Pa. 414; Penna. R. R. Co. v. Henderson, 51 Pa. 315; Willock v. R. R. Co., 166 Pa. 184; Schaeffer v. R. R. Co., 168 Pa. 209; Trace v. Penna. R. R. Co., 26 Pa. Superior Ct. 466; Rowdin v. R. R. Co., 208 Pa. 623; Trexler v. B. & O. R. R. Co., 28 Pa. Superior Ct. 198; Rhymer v. R. R. Co., 27 Pa. Superior Ct. 345; Eckert v. R. R. Co., 211 Pa. 267; Hughes v. R. R. Co., 202 Pa. 222.

In the absence of a special provision in the contract of shipment, the carrier is bound to feed and water live stock being transported by it, at proper intervals along the route; and it will be liable for loss or injury occurring to the stock on account of its failure to do so: Wabash R. R. Co. v. Thomas, 222 Ill. 337 (78 N. E. Repr. 777); 7 L. R. A. (N. S.) 1041; Toledo, etc., Ry. Co. v. Hamilton, 76 Ill. 393; Ill. Cent. R. R. Co. v. Beebe, 174 Ill. 13 (50 N. E. Repr. 1019); Abrams v. Milwaukee, L. S. & W. Ry. Co., 87 Wis. 485 (58 N. W. Repr. 780); Missouri, etc., Ry. Co. v. Leibold, 55 S. W. Repr. 368.

Even where such duties are expressly assumed by the shipper, the carrier is still bound to furnish him proper facilities and opportunities for attending to his stock; and is liable for losses resulting from failure to do so: Dawson v. St. Louis, etc., Ry. Co., 76 Mo. 514; Mobile, etc., R. R. Co. v. Mullins, 70 Miss. 730 (12 So. Repr. 826); German v. R. R. Co., 38 Iowa, 127.

If the carrier is aware that no one is accompanying the animals to care for them, his duty to give them proper attention is the same as though no contract for care by the shipper had been made: Chicago, etc., Ry. Co. v. Slattery, 107 N. W. Repr. 1045; Wallace v. Ry. Co., 133 Mich. 633 (95 N. W. Repr. 750); Heller v. Ry. Co., 109 Mich. 53 (66 N. W. Repr. 667); Chicago, B. & Q. Ry. Co. v. Williams, 61 Neb. 608 (85 N. W. Repr. 832).

If the plaintiff has even been guilty of neglect in abandoning the train, it was still the duty of the carrier to take every reasonable precaution to preserve the stock and to minimize the damage: Chouteaux v. Leech, 18 Pa. 224.

OPINION BY ORLADY, J., October 12, 1908:

The plaintiff, a dealer in stock, delivered to the defendant company at East St. Louis, Ill., in the afternoon of December 19, 1904, twenty-two mules for shipment from that point to Somerset, Pa., where they arrived in the morning of December 24, when it was found that four of the mules were dead, a fifth died soon thereafter, and the others were in such bad condition that their market value was depreciated about twenty-five to thirty per cent.

The plaintiff was familiar, through eight years of experience as a shipper of stock, with the methods adopted by this railroad company, and, as stated by the agent of the defendant company, gave personal instructions for their shipment and consignment, as well as the manner in which he desired the car to be prepared on account of the inclement weather then prevailing. The train left East St. Louis about 4:30 P. M. and was accompanied by the plaintiff until they arrived at Cincinnati the following day about four o'clock in the afternoon. This was a division terminal point of the railroad, where the engine and caboose were detached, and an east-bound train was made up with a new engine and caboose attached. After making diligent inquiry of employees at the yard office of the company he continued his search of the east-bound train at different parts of the stock yards and feeding places at Cincinnati from between five and six o'clock in the afternoon until eleven o'clock that night. He then went to a hotel for the night, and returned about five o'clock in the morning, and made further inquiry for the train at the yard master's office of the company, and was told that they could not account for its departure unless the company took it around the yards. He then asked, "How am I to get back home?" To which reply was made, "The only thing I can tell you to do is to go home and get your agent there to wire after your stock." In other words, send a tracer for the car. He returned direct to Somerset by passenger train, and through the local agent of the defendant company made his inquiries.

The mules arrived at Pittsburg in alleged good condition on December 23, at six o'clock in the morning, and were there

given an unlimited supply of water and 350 pounds of hay, when they were again put into the car for transportation to Somerset at seven o'clock, and arrived as before stated on December 24, in the morning.

After having been fed at East St. Louis, December 19, they were not again fed until their arrival at Pittsburg on the morning of December 23. It further appears that the company makes provision for supplying feed and water for the stock at designated places where the shipper is furnished feed for which a charge is made by the company and the cost is attached to the freight waybill as an item of advanced charges. When the car arrived at its destination, freight charges amounting to $99.00 and $7.50 advanced charges for feed at East St. Louis, and $5.25 advanced charges for feed at Pittsburg Junction were demanded by the company before delivery, and payment thereof was made by the plaintiff.

It is conceded that provision is made for feeding and watering stock at Columbus, Ohio, where the train arrived at 11:35 December 21, and at Newark, Ohio, at 12:30 P. M. of the same day. That at that time the waybill did not show when the stock in transit had last been fed and watered. There is no complaint as to the character of the car or of any of the methods or appliances of transportation. The contention of the plaintiff being that the damage he suffered was due to the negligence of the railroad company in not feeding and watering the stock between St. Louis and Pittsburg, and in the reckless and careless manner of feeding and watering them at Pittsburg. Their appearance at Somerset was described, by a number of witnesses, as being "gaunted," "withered" "all drawn up and starved looking."

The important questions involved are in the points and the answers of the court thereto, as follows:

"That is it is competent for a common carrier to limit its liability, except for its negligence, and if the plaintiff is entitled to recover it can only be for the fixed valuation in the contract." Answer: "As this point is written, we refuse it."

"That by the terms of the contract, defendant's exhibit No. 1, it was provided as follows: That said shipper is at his own

sole risk and expense to load and take care of and to feed and water said stock whilst being transported, whether delayed in transit or otherwise, and to unload the same, and neither said carrier nor any connecting carrier is to be under any liability or duty with reference thereto except in the actual transportation of the same. And the plaintiff having accompanied the train as far as Cincinnati, Ohio, where it arrived at 4:25 P. M. on the 20th of December, 1904, and the car containing said mules was taken to the stock yards at six o'clock P. M. and left the stock yards at Cincinnati at 8:15 P. M. on the 20th of December, 1904, a period of three hours and fifty minutes after its arrival at said stock yards, during which time the plaintiff did not attend to feeding and watering said mules, but went to bed, and the next morning took a passenger train for his home at Somerset, Pa., he was guilty of contributory negligence, and the verdict must be for the defendant." Answer: "This point is refused."

4. "The plaintiff cannot recover unless the death of the mules is attributable to the fault of the defendant. If the defendant company was partly in fault, but if the plaintiff could have prevented their death by traveling with and feeding and watering the mules, as he undertook to do by the terms of his written contract (defendant's exhibit No. 1) he cannot recover." Answer: "I have said to you and I affirm this point so far that the plaintiff cannot recover unless the defendant was guilty of negligence, and the plaintiff free from contributory negligence, but I refuse to say, though, that as this point implies under the circumstances it was the duty of the plaintiff to travel with and feed and water the mules, but submit to you whether he, under all the circumstances in the case, was guilty of contributory negligence in not so doing. If he was he cannot recover, and in that sense the point is affirmed."

5. "Under all the evidence and the law in the case, the verdict must be for the defendant." Answer: "This point is refused."

The contract in question is entitled "Uniform Limited Liability Live Stock Contract for Baltimore and Ohio Southwestern Railroad Company," which company, it is admitted,

is under the management of the defendant company, and contains the clause in regard to which the defendant asked specific instructions, as above quoted.

It was held in Hughes v. Penna. Railroad Co., 202 Pa. 222, that where a contract containing a stipulation limiting liability for negligence, is made in one state, but with a view to its performance, by transportation through or into one or more other states, we see no reason why it should not be construed in accordance with the law of the state where its negligent breach causing the injury, occurs. If such clause comes under construction in a state like Pennsylvania whose policy prohibits such exemption (limited liability) and the injury has occurred in a state where the contract is valid, the stipulation will be enforced as in Forepaugh v. Railroad Co., 128 Pa. 217, and in Fairchild v. Railroad Co., 148 Pa. 527. But if the injury has taken place within its limits, it will declare the contract null and void, as in Burnett v. Railroad Co., 176 Pa. 45. This authority is decisive of the question of limited liability under the facts of this case.

It is uncontradicted that the plaintiff gave direct orders in writing to the conductor of the train from St. Louis to Cincinnati to have the stock fed at Cincinnati, and it is admitted that this was not done at that place, nor at either of the other places named above where facilities for so doing were provided by the railroad company, before reaching Pittsburg, so that the mules were furnished feed and water but once during the 110 hours they were in the care of the defendant company. That the limitation of the common carrier's liability by a special contract does not relieve the carrier from liability for his own negligence has been frequently stated by our courts: Penna. Railroad Co. v. Miller, 87 Pa. 395; Penna. R. R. Co. v. Raiordon, 119 Pa. 577; Needy v. R. R. Co., 22 Pa. Superior Ct. 489.

It is conceded that the mules were delivered to the railroad company in good condition and that when they arrived at Somerset five were dead and the others were seriously affected as to their market value by reason, as testified to by a number of witnesses, from lack of food and water, and these facts were properly considered along with the other evidence by the

jury.  No explanation being offered by the defendant as to the
cause of their condition when they were delivered to the plain-
tiff: Buck v. Railroad Co., 150 Pa. 170; Crary v. Lehigh Valley
R. R. Co., 203 Pa. 525.

As stated by Judge WILLIAMS in Willock v. Penna. R. R. Co.,
166 Pa. 184, the carrier and the shipper do not stand on equal
terms.  The latter cannot afford to refuse that which the
carrier demands as a condition of the transportation of his
goods.  The rule that stipulations, insisted on by carriers or
other persons who stand in such a position towards their cus-
tomers as enables them to compel compliance with their de-
mands or destroy their customer's business, should be judged
of by their fairness and be held void whenever they are un-
reasonable or oppressive, is one of very general acceptance.
In such cases the injury to the contents of the car itself may
furnish an inference of want of ordinary care in transportation:
American Express Co. v. Sands, 55 Pa. 140; Grogan v. Adams
Express Co., 114 Pa. 523; Trace v. Railroad Company, 26 Pa.
Superior Ct. 466; Rowdin v. Penna. R. R. Co., 208 Pa. 623;
Trexler v. B. & O. R. R. Co., 28 Pa. Superior Ct. 198.

Conceding that the duty of feeding and watering the mules
was expressly assumed by the shipper, yet the carrier is still
bound to furnish proper facilities and opportunities for at-
tending to his stock, and under the facts of this case, it must
have been known to the carrier that no person accompanied
this car to attend to the feeding and watering of the mules, and
then it became their duty to give them proper attention the
same as though no contract for care by the shipper had been
made.  Whether or not the shipper was guilty of contributory
negligence in not being with the mules after leaving Cincinnati,
was purely a question of fact, and under the undisputed proof
the caboose in which he came from St. Louis was detached
from the train at Cincinnati and the detached train moved to a
different part of the yard, and so made up with a new engine
and caboose that even the employees in the yard master's of-
fice did not know of its location.  Under the admitted facts and
viewed in the light of the plaintiff's testimony that he made
active and continued search for the train during the evening

and early the next morning, the jury were fully ·warranted in finding that he was not guilty of contributory negligence in becoming separated from the car, and that the shipper was fully justified in acting on the advice of the yard master to go by passenger train to Somerset, and have the agent of the defendant company trace the car from that point: Wabash R. R. Co. v. Thomas, 222 Ill. 337; 7 L. R. A. (N. S.) 1041.

The first six assignments of error, relating to the ruling of the court on special items of evidence, are not material to the disposition of the case, and counsel for appellant frankly concede that the real question must be determined on the answers to the point, as hereinbefore quoted. All controverted questions of fact having been settled adversely to the appellant, and the question of law alone being the subject of review here, we are of the opinion that the judgment must be affirmed.