# Keller, Appellant, *v.* Pennsylvania Railroad Company.

*Common carriers—Carriers—Railroads—Contract—Implied contract —Specified contract.*

1. Where an owner of goods has brought an action of assumpsit against a terminal carrier to recover damages for the loss or injury of the goods, and has rested his case on the implied common-law contract of a carrier to deliver goods safely, he cannot complain of a nonsuit entered against him, when it is developed during the course of the trial that he had entered into a special contract with the initial carrier which covered the transportation of his property not only over the lines of the initial carrier, but also over the lines of any connecting carrier necessary to reach the destination.

2. In such an action the plaintiff's case cannot be sustained by mere proof of the damaged condition of the goods when delivered at destination, and the presumption of negligence thereby arising.

Argued Nov. 16, 1910. Appeal, No. 122, Oct. T., 1910, by plaintiff, from order of C. P. Lancaster Co., Aug. T., 1907, No. 5, refusing to take off nonsuit in case of Z. W. Keller v. The Pennsylvania Railroad Company. Before RICE, P. J., HENDERSON, MORRISON, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit against a carrier to recover damages for injuries to goods. Before LANDIS, P. J.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*B. F. Davis*, for appellant.—The action may be either in assumpsit or trespass: Eckert v. R. R. Co., 211 Pa. 267; Baylor v. Stevens, 16 Pa. Superior Ct. 365; Furbush v. Buchsbaum, 34 W. N. C. 147; Zell v. Dunkle, 156 Pa. 353; Vuille v. R. R. Co., 42 Pa. Superior Ct. 567.

*W. U. Hensel*, for appellee.—This case is ruled by Leh v. D., L. & W. R. R. Co., 30 Pa. Superior Ct. 396.

OPINION BY HEAD, J., March 3, 1911:

Even if we agree with the learned counsel for the appellant, that he who relies on the general obligation of a common carrier to carry his goods safely and who finds his property damaged when it reaches its destination, may, at his option, sue in trespass for a breach of duty or in assumpsit for a failure to perform an implied contract, we have not yet reached the crux of the question presented by this record. Whilst in many of the familiar transactions of everyday life the law will imply a contract where none has been expressed, this in no way impinges on the rights of the parties concerned to make contracts for themselves. When therefore, in such cases, the parties to any transaction have chosen to specially contract for themselves, they thereby set aside and supersede the implied contract which the law would otherwise make for them. In such cases the respective rights and obligations of the parties are to be ascertained and enforced by the application of the principles of law and rules of evidence that ordinarily control, in the decision of litigated questions, between parties who have entered into declared contractual relations with each other.

From the testimony offered by or for the present plaintiff it appears that his case was this: He was the owner of a number of horses which he desired to have transported by rail from Walkersville in the state of Maryland to Mount Joy in Lancaster county, Pennsylvania. The point of shipment is located on the line of the Northern Central Railroad Company and is not reached by the lines of the defendant. The point of destination is situate on the lines of the defendant company and not reached by those of the company first named. The lines connect at Columbia in Lancaster county. It is therefore apparent that the plaintiff's property had to be transported by the initial carrier to the end of its line and by a connecting carrier thence to its destination. He delivered his horses to the initial carrier, at the point of shipment, under the terms of a special contract in writing into which he en-

tered with that company, presumably for his own benefit. This contract, as appears by a coupon detached therefrom, delivered to the plaintiff and offered in evidence by him, was what is called a "uniform live stock contract." How far or in what respect this contract modified the relation that would have otherwise existed between shipper and carrier we cannot say because the contract was neither sued on nor offered in evidence. But it does appear that it covered the transportation of the plaintiff's property not only over the lines of the Northern Central Railway, but also over the lines of any connecting carrier necessary to reach destination. In pursuance of this contract the Northern Central Railway Company furnished to the plaintiff a car on its siding at the point of shipment. This car happened to be the property of the defendant company, but this fact has no more significance than if the car had belonged to a railroad west of the Mississippi river or operating in New England only. It was furnished by the initial carrier for a through shipment to destination, and for the purposes of this case must be regarded as the car of that carrier.

When the car reached Mount Joy and the plaintiff undertook to unload his horses, he found that several of them had been injured, probably by reason of some defect in the car. There was evidence to show that when the car arrived one of the slats near the floor had become loose and misplaced, and some defect was apparent in the condition of the car door, and the jury would have been warranted in finding that it was because of these defects that the horses suffered injury. It also appeared that a similar defect was noticed before the horses were loaded, but it had been repaired, to the plaintiff's satisfaction, before shipment. When the board or door again became defective and the consequent injury occurred, whether on the line of the initial carrier or this defendant, the evidence in no way discloses.

To recover damages for this injury the plaintiff brought this action of assumpsit against the defendant, the con-

necting carrier. In his statement of claim he declares that his cause of action existed in the fact that the defendant, being a common carrier, had committed a breach of its implied contract to carry and deliver his horses safely. His statement thus plants his right to recover on a breach of the general contract which the law would have implied, had he made none for himself, and ignores entirely the fact that he had entered into an express contract with the initial carrier covering the through shipment. In the face of the fact that he thus had an express contract, he not only declared upon a different contract, which the law would imply only in the absence of an express one; but he failed in his proof to show any breach of any contract by the defendant company. He then sought to rely on the presumption which the law raises where the suit is based on an implied contract, or where the action is in tort for a negligent breach of duty. At the conclusion of his testimony the learned trial court entered a compulsory nonsuit and afterwards refused to take it off, and the propriety of this action is practically the only question raised by this appeal.

Although we may agree, for the purposes of this case, that the plaintiff could maintain an action of assumpsit for the breach of the implied contract made by the carrier on the receipt of his property, had he chosen to make no other contract for himself, we think, both on reason and authority, that when it appeared that the plaintiff had entered into an express contract, his action, founded on an entirely different contract, necessarily failed.

Many cases could be cited in support of this proposition, but we content ourselves with the following references to two of the recent ones where the entire doctrine is discussed. In Crary v. Lehigh Valley Railroad Company, 203 Pa. 525, the plaintiff was a passenger on the train of the defendant. He had entered into a special contract for his transportation by the purchase of a particular kind of ticket which established other relations between the parties than those that would have existed had he simply

paid the usual rates for transportation and relied on the implied contract which the law would thereupon have raised on the part of the carrier.  Whilst seated next to the window in the defendant's car "the door of a freight car on a passing train became loose and was thrown against the car in which the plaintiff was seated, and in scraping along the car came through the window, where the plaintiff sat, and caused the injury for which suit was brought."  The plaintiff, having proven that he was a passenger and injured in the manner described, without any proof of any act of negligence on the part of the defendant, rested his case on the presumption raised by the law where a passenger would be similarly injured who had no express contract with the carrier, but relied entirely on the obligation which the law would imply for him. The learned trial court directed a verdict for the defendant on the ground that the evidence was not sufficient to establish any negligence on its part and that the plaintiff, having entered into a special contract with the defendant, "was not entitled to the ordinary presumption of negligence in favor of passengers where there has been an injury to the means of transportation."  In affirming this judgment, Mr. Justice BROWN, speaking for the court, said: "At common law if property was lost or injured while in the hands of the carrier, the burden of proof was on the carrier to show the existence of such circumstances as were sufficient to excuse him from liability.  Such is still the general rule, but when a special contract is entered into between the shipper and the carrier, the contract takes the place of the common-law rule and fixes the liability of the carrier: Penna. R. R. Co. v. Raiordon, 119 Pa. 577."

It is, of course, true in Pennsylvania that even where there is a special contract between shipper and carrier, the latter is not permitted, on grounds of public policy, to extinguish or even restrict its liability for a loss occasioned by its own negligence.  But even in such cases the shipper, suing on his contract, must prove affirmatively

the act of negligence on which he relies. He cannot avail himself of the presumption which the law raises only in favor of him who relies on a contract that the law makes for him. In Leh v. D., L. & W. Railroad Co., 30 Pa. Superior Ct. 396, we have a case in which the facts are almost identical with those exhibited by this record, and which we can in no way distinguish in principle from the one in hand. There the plaintiff shipped nineteen horses at Indianapolis, Indiana, consigned to Nazareth, Pennsylvania. The car containing the horses was delivered at the point of destination by the defendant company, the connecting and final carrier. Some of the horses, being found to be injured, the plaintiff sued the final carrier, as in this case, and relied, as here, on the presumption of negligence arising from the fact that his horses were found to be injured when they reached their destination. There, as here, it appeared that the plaintiff had entered into a written contract with the initial carrier covering the through shipment. There, as here, the learned trial court entered a compulsory nonsuit which he afterwards refused to take off. In affirming the judgment, Judge ORLADY, speaking for this court, after discussing the general principle involved and citing many cases, said: "No reason has been suggested to affect in any way the validity of the contract made by the plaintiff at Indianapolis, and, as it covered the transportation of the horses over all the intervening lines to the point of destination, he cannot proceed piecemeal against the several carriers under their common-law liability while his special contract involved the whole distance. He cannot abandon the express contract and resort to an implied one; the one voluntarily made by him must be the measure of his rights and liabilities."

As already stated, we can find no substantial ground on which that case can be distinguished from the present one, and on well-established principles we must follow it. The plaintiff, therefore, having rested his case on the implied common-law contract of a carrier, when it appeared

that he had entered into a special contract for the transportation of these horses, and when his proof failed to disclose any act of negligence by the defendant carrier or any breach of the contract which he had made for himself, we are driven to the conclusion that the learned trial judge was right in holding that the proof failed to sustain the plaintiff's cause of action, and the compulsory nonsuit was therefore properly entered.

This view of the case renders it unnecessary for us to consider the fourth assignment of error which goes only to the exclusion of certain testimony tending to show the damages sustained by the plaintiff. The first, second and third assignments of error are overruled.

Judgment affirmed.